**Ormayne TOMPKINS and Mary Tompkins, Plaintiffs/Respondents,**

v.

**Haruo KUSAMA, M.D.,
Defendant/Appellant.**

**No. 58704.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 3, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 1992.

Application to Transfer Denied
Feb. 25, 1992.

William L. Webster, Atty. Gen., Jefferson City, Stephen M. Prosperi, Asst. Atty. Gen., St. Louis, for defendant/appellant.

Leonard P. Cervantes, Cervantes & Igoe, St. Louis, for plaintiffs/respondents.

AHRENS, Judge.

In this wrongful death action, defendant, Dr. Haruo Kusama, appeals from the judgment in favor of plaintiffs Ormayne and Mary Tompkins for the death of their son, Steven. We reverse.

Defendant raises ten points on appeal. We find one point dispositive: the trial court erred in denying defendant's motions for directed verdict, judgment notwithstanding the verdict, and new trial "for the reason that, as a matter of law, plaintiffs failed to introduce any evidence sufficient to support a finding by the jury that defendant's conduct directly caused or directly contributed to cause the death of Steven Tompkins."

■ Three elements must be established to make a prima facie case of medical malpractice: (1) "proof that an act or omission of the defendant failed to meet the requisite medical standard of care," (2) "proof that the act or omission was performed negligently," and (3) "proof of a causal connection between the act or omission and the injury sustained by the plaintiff." *Yoos v. Jewish Hosp.*, 645 S.W.2d 177, 183 (Mo.App.1982). In determining whether plaintiffs made a submissible case, "all the evidence must be viewed in the light most favorable to the plaintiffs, giving them the benefit of all favorable inferences and disregarding defendant's evidence, except insofar as it might be favorable to the plaintiffs." *Id.*

In April, 1980, Steven Tompkins, age 12, was referred by the St. Louis City Juvenile Court to the Day Hospital program at St. Louis State Hospital. At that time, defendant, the treatment team psychiatrist in the Day Hospital program, diagnosed Steven as suffering from Atypical Anxiety Disorder and Specific Developmental Disorder.

In August, 1980, Steven took an overdose of medication. Defendant continued to treat Steven until early 1981 when the Day Hospital program was eliminated and defendant was transferred to outpatient psychiatry. Steven continued to receive treatment through the hospital's Day School program. Following defendant's transfer, Dr. Lucia Buylla, a resident child psychiatrist, assumed the role of Steven's treatment team psychiatrist. Defendant had no further clinical interaction with Steven until May, 1981.

On May 11, 1981, Steven began trembling and crying while at home. Steven told his father, "I'm going to be dead on my birthday. I'm going to take a car out on the street, the police are going to come after me, and I'm going to jam it to the floor. And I'm going to hit one of those big concrete things down on Broadway." Steven also told his father he would "take a lot of people" with him. Steven repeated these statements the following day.

On May 13, 1981, plaintiffs took Steven to State Hospital. There, plaintiffs and Steven spoke with Dr. Buylla. After interviewing Steven, Dr. Buylla escorted plaintiffs and Steven to defendant's office. Dr. Buylla asked defendant for his consultation and assistance. Defendant and Dr. Buylla then met with Steven and plaintiffs.

Defendant saw Steven the next day. He diagnosed Steven as suffering from nonspecific depression and panic anxiety. On May 15, 1981, Mr. Tompkins met with defendant, and defendant gave Mr. Tompkins a prescription for Imipramine, an anti-depressant, to be administered to Steven. Mr. Tompkins telephoned defendant a few days later and told him Steven was still depressed, but was taking the medicine "fairly well." Mr. Tompkins telephoned defendant on a later date and told him Steven was still depressed and was talking about dying.

In the early morning of May 30, 1981, two police officers responded to a call regarding youths creating a disturbance in a park. The officers spoke to one youth and told him to go home. Later, the officers observed the youth standing next to the passenger door of an Oldsmobile. There were individuals in the front and rear seats of the Oldsmobile. As the officers approached the car, the youth said, "It's the police, they want to talk to you. Let's get out of here." The driver of the Oldsmobile took off and went through an intersection without stopping. The officers proceeded

in the same direction and pulled alongside the Oldsmobile. As one officer motioned for the driver to pull over, he observed that some of the individuals in the car were pulling on the driver. The Oldsmobile turned into the side of the police car, forcing it into oncoming traffic. The officers lost sight of the vehicle until it crested a hill. The officers heard a loud noise and found the wrecked Oldsmobile next to a concrete pillar. Steven was identified as the driver of the Oldsmobile; Steven and his five passengers were killed in the crash.

Plaintiffs submitted their case using this verdict director:

In your verdict you must assess a percentage of fault to defendant Haruo Kusama, M.D. whether or not you believe plaintiffs were partly at fault if you believe:

First, either:

Defendant failed to prepare medical records of his treatment of Steven Tompkins from May 13, 1981 to the date of his withdrawal, or

Defendant failed to properly monitor Steven Tompkins' condition, or

Defendant withdrew from treating Steven Tompkins on May 18, 1981 without advising plaintiffs, or

Defendant failed to document his withdrawal from the treatment of Steven Tompkins in Steven Tompkins' medical records, and

Second, defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused, or directly contributed to cause the death of Steven Tompkins.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession.

■ At trial, plaintiffs offered evidence that defendant failed to properly document his care and treatment, failed to monitor Steven's taking of medication, and failed to notify Steven's parents that he was withdrawing from the case. Defendant conceded that his failure to document his withdrawal from the case fell below the standard of care. We agree with defendant, however, that plaintiffs failed to make a submissible case of medical malpractice to recover against defendant for the death of their son. Plaintiffs failed to prove a causal connection between defendant's alleged acts or omissions and Steven's death.

At oral argument, plaintiffs' counsel stated that plaintiffs were attempting to recover against defendant on the basis that Steven's death was a suicide. Plaintiffs' counsel acknowledged, however, that defendant would not be liable if Steven's death was the result of an automobile accident rather than a suicide. Accordingly, to assess fault to defendant, the jury had to find Steven's death was a suicide. Plaintiffs' evidence did not support such a finding.

Plaintiffs' expert found no fault in defendant's diagnosis or the prescribing of Imipramine. In the expert's opinion, Steven "had an ongoing and intermittent suicidal state of mind." The expert testified that the effect of defendant's acts and omissions was to deprive the treatment team of information and to deprive Steven of follow-up care by another physician. However, the expert was unable to testify to a reasonable degree of medical certainty that Steven was suicidal or that Steven's death was a suicide.

■ Generally, a submissible case may be made if a plaintiff presents substantial evidence that the injury "is a natural and probable consequence of the defendant's act or omission." *Jines v. Young*, 732 S.W.2d 938, 945 (Mo.App.1987). Further, the burden of proving a causal connection may be met by circumstantial evidence. *Id.* "If the logical conclusion from the evidence is that if certain things had been properly done certain results would not have occurred, and such results *did* occur, the evidence of causation is sufficient." *Id.* (emphasis original). There is insufficient evidence in the record to support a conclusion that Steven would not have died in the automobile crash had Dr. Kusama

**466**

better documented his care and treatment, monitored medication, or notified the parents he was withdrawing from the care of Steven.

Plaintiffs maintain there was no requirement that their expert testify Steven's death was a suicide. Rather, plaintiffs contend a "jury could infer from the threats of decedent, the testimony as to his state of mind, his prior suicidal conduct, and the circumstances of his death, that on May 30, 1981, he did, in fact, carry out the suicide threat which he had made on May 11."

"If under the evidence viewed most favorable to the plaintiffs, the question of negligence can be determined only by resort to conjecture and surmise on the part of the jury, the plaintiffs failed to make a submissible case." *Yoos*, 645 S.W.2d at 183; *Rauschelbach v. Benincasa*, 372 S.W.2d 120, 125 (Mo.1963). This case does not involve an obvious causal connection between defendant's negligence and Steven's death. Under plaintiffs' pleaded and submitted theory, defendant cannot be held accountable for Steven's death if it was not suicide. Viewing the evidence in the light most favorable to the verdict, the circumstances surrounding Steven's death are supportive of a finding that, while fleeing from the police, this thirteen-year-old individual lost control of the vehicle he was driving. There was no substantial evidence that Steven's death was a suicide. This case involves circumstances indicative of an accidental death. Accordingly, under the particular facts of this case, it was improper to permit the jury, without the aid of expert testimony, to infer Steven died as a result of a suicide, because no layperson could know or have any reasonable basis for such inference. *See James v. Sunshine Biscuits*, 402 S.W.2d 364, 372 (Mo. 1966). Under these facts, in the absence of expert testimony that Steven died as a result of suicide, the jury could have resolved the question of causation only through resort to conjecture and surmise. *See Rauschelbach*, 372 S.W.2d at 127.

Plaintiffs failed to make a submissible case on the issue of causation. The record indicates that all available essential evidence was fully presented and that no recovery could be had in any event. *See Swope v. Printz*, 468 S.W.2d 34, 41 (Mo. 1971). Accordingly, the trial court's judgment is reversed.

SMITH, P.J., and KAROHL, J., concur.