Ormayne TOMPKINS and Mary Lou
Tompkins, Plaintiffs/Appellants,

v.

**Leonard CERVANTES,**
Defendant/Respondent.

No. 68618.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 30, 1996.
Rehearing Denied March 11, 1996.

Laurence D. Mass, Eli Karsh, Clayton, for Appellant.

Hinshaw & Culbertson, Brent W. Baldwin, Bruce J. Weingart, St. Louis, for Respondent.

PUDLOWSKI, Judge.

This is an appeal by plaintiffs from a summary judgment awarded to defendant in a legal malpractice claim.

In the evening of May 30, 1981, Steven Tompkins, thirteen year old son of appellants herein, took the family Oldsmobile without permission. Young Steven and some friends were stopped at a public park in St. Louis in the early morning hours when a pair of police officers happened upon them. One of Steven's companions had already had a brief exchange with the officers, and upon seeing them again, he informed Steven that the officers were looking for him and implored Steven to flee immediately. Steven and his cohorts did so, but the officers pursued, pulling up alongside the Oldsmobile at one point before being nudged into the on-coming lane of traffic and losing ground on the speeding vehicle. The officers later stated that they observed one or more of the passengers in the car pulling on Steven as he drove; but the officers lost sight of the speeding car as it crested a hill. The next thing the officers perceived was a loud crash, which they soon realized was the sound of the Oldsmobile plowing into a concrete post. Steven and five of his passengers were killed in the disaster.

In the weeks prior to the fatal car ride, Steven had received treatment for various psychological afflictions from one Dr. Kusama, a staff physician at State Hospital. According to Steven's father, Steven had announced on May 11 that he had a premonition of himself involved in a high-speed chase with police, a chase which ended with Steven crashing into a concrete post, killing himself and all others. It was this frightful forecast which apparently prompted appellants to seek treatment for their son. Dr.

Kusama diagnosed Steven as suffering from an on-going intermittent suicidal condition, as well as an anxiety disorder, and prescribed medication to control these problems.

Around May 15, Dr. Kusama apparently withdrew as Steven's treating physician and ceased to monitor Steven's status, failing to inform appellants or any other member of the hospital staff of his withdrawal. After Steven's death, appellants retained respondent to represent them in a wrongful death action against Dr. Kusama, alleging that his nonfeasance with regard to Steven was the legal cause of Steven's fatal accident.

In appellants' suit against Dr. Kusama, respondent's theory was that Dr. Kusama's failure to monitor Steven's compliance with his medication schedule and his failure to inform appellants and other doctors of his withdrawal from Steven's care left Steven with an untreated suicidal condition. Respondent further theorized that the fatal crash on the night of May 30 was an act of suicide committed by Steven which would not have occurred if not for Dr. Kusama's negligence. However, Dr. Resnik, the medical expert respondent had retained for trial, could not testify that Steven's death was a suicide. The jury returned an award of $562,000 for appellants, but on appeal this court overturned the jury verdict, ruling that, as a matter of law, there was insufficient evidence of causation because there was no substantial evidence that Steven's death was a suicide. *Tompkins v. Kusama*, 822 S.W.2d 463 (Mo.App.E.D.1991).

Appellants subsequently brought this claim against respondent for legal malpractice, alleging that although Dr. Resnik's testimony could not establish that Steven's death was a suicide, Dr. Resnik could have given testimony that would have satisfied the causation requirements in the underlying medical malpractice action and that respondent had been negligent in failing to elicit such testimony from Dr. Resnik, thereby, dooming appellants' case. It is this testimony, and the theory of causation of which it is a part, that is the centerpiece of the present appeal.

The trial court granted summary judgment in favor of respondent, interpreting *Tomp-* *kins v. Kusama* to mean Dr. Kusama's negligence could not be established as the cause of Steven's death under any theory. We now affirm that result.

### Respondent's Motion to Dismiss Appeal and to Strike Appellants' Brief

We must attend to several matters before commencing our analysis. Respondent urges this court to dismiss this appeal, or alternatively to strike appellants' brief, for failure to comply with Supreme Court Rule 84.04. Respondent complains specifically that appellants have neglected to support each factual assertion in the Statement of Facts section of their appellate brief with citation to the legal file, and has included impermissibly argumentative language in the Statement of Facts.

Selection of an appropriate sanction for violation of Rule 84.04 is vested in this court's discretion. *Stevens v. State*, 560 S.W.2d 599 (Mo.App.S.D.1978); *French v. Tri–Continental Leasing Co.*, 545 S.W.2d 345 (Mo.App.S.D.1976). We agree with respondent that appellants' brief does violate Rule 84.04 for the reasons mentioned. However, we decline to punish appellants in the manner requested. The relatively few factual assertions which lack citation deal with uncontroverted facts. As for appellants' use of argumentation in their Statement of Facts, we assure respondent that we were not swayed by this misplaced advocacy. In any event, the cases in which the appellate courts of this state have invoked the harsh sanctions respondent now seeks have involved abuses more egregious than those present here. See *Pemiscot County Memorial Hospital v. Missouri Labor and Industrial Relations Commission*, 825 S.W.2d 61 (Mo.App.S.D. 1992); *Vodicka v. Upjohn Co.*, 869 S.W.2d 258 (Mo.App.S.D.1994); *Kantel Communications, Inc. v. Casey*, 865 S.W.2d 685 (Mo.App. W.D.1993). Motion denied.

### Review of Summary Judgment

Summary judgment is appropriate where there is no dispute as to any material fact, and judgment is proper as a matter of law. The analysis of the present case falls within the second branch of this test, because

the only dispute is whether the evidence which appellants now present would have been sufficient to satisfy the causation element of the medical malpractice tort; if so, then appellants have pleaded a submissible case of legal negligence.

 Our review of a judgment summarily granted is essentially de novo. However, we do credit all evidence, and reasonable inferences therefrom, which tend to support the case of the party against whom summary judgment was granted. To prevail in a legal negligence action, a plaintiff must prove four elements: 1) the existence of an attorney-client relationship; 2) the attorney acted negligently or in breach of contract; 3) such acts were the proximate cause of plaintiff's damages; and 4) but for attorney's negligence, plaintiffs would have been successful in the underlying suit. *Boatright v. Shaw*, 804 S.W.2d 795, 796 (Mo.App.E.D.1990). The suit underlying the instant case was based on medical malpractice, an action which requires proof of negligence which caused a plaintiff's injury. *Jines v. Young*, 732 S.W.2d 938, 944 (Mo.App.S.D.1987). Thus, for appellants to prevail they must present that which was found lacking by this court in *Tompkins v. Kusama:* substantial evidence that Dr. Kusama's negligence caused or contributed to cause Steven's death.

As noted, appellants received a verdict after trial for their medical malpractice claim, and the reversal on appeal was premised exclusively on insufficient evidence of causation. Dr. Kusama conceded that his failure to document his withdrawal from Steven's care fell below the medical standard of care. *Tompkins* at 465. Causation in this case is perhaps best understood as comprised by two discrete components: the linkages between Dr. Kusama's nonfeasance and Steven's flight from the police, and between the former and the actual fatal car collision.

As is necessary in medical malpractice cases, respondent attempted to establish causation through the testimony of a medical expert witness, Dr. Resnik. It is his deposition testimony in this cause of action on which appellants rely for the proposition that causation could be established via expert testimony that Steven would not have fled from the police but for Dr. Kusama's negligence. Leaving aside for the moment whether appellants are correct in assuming such testimony establishes causation, there are serious questions as to whether Dr. Resnik, in fact, provides this testimony.

 When a party relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of certainty. *Wyckoff v. Davis*, 297 S.W.2d 490, 494 (Mo.1957). When an expert merely testifies that a given action or failure to act "might" or "could have" yielded a given result, though other causes are possible, such testimony is devoid of evidentiary value. *Bertram v. Wunning*, 385 S.W.2d 803, 807 (Mo.App.E.D.1965); *Shackelford v. West Central Electric Co-op, Inc.*, 674 S.W.2d 58, 62–3 (Mo.App.W.D.1984); *Hunt v. Armour & Co.*, 136 S.W.2d 312, 315–16 (Mo.1939). A review of Dr. Resnik's deposition testimony reveals, on pages 35–36 and again at page 124, that he believes it is more likely than not that Steven would not have died if Dr. Kusama had not been negligent. On page 125, Dr. Resnik concedes he cannot say to a reasonable degree of medical certainty that Dr. Kusama's negligence caused Steven's death, though he does say at page 128 and again at pages 130–131 that fleeing from the police was caused by Dr. Kusama's negligence, to a reasonable medical certainty. On the next page, he says the flight from the police was more likely than not caused by Dr. Kusama's negligence. On page 123, Dr. Resnik admits that when presented with a proposed affidavit stating that Steven's death "would have been prevented" if not for Dr. Kusama's negligence, he changed the sentence to read "might have been prevented." Finally, at page 134, Dr. Resnik explains that the phrase "might have" means "more likely than not" to him; elsewhere in the deposition he glosses "reasonable medical certainty" to mean "more likely than not", so that all three phrases are apparently identical to him. However, on the next page Dr. Resnik admits he cannot say to a reasonable medical certainty that proper treatment would have saved Steven's life, only that it is more likely

than not, thereby, tacitly conceding he does not regard these standards as identical.

■ Where the only evidence of a necessary element of a claim is self-contradictory, it does not constitute sufficient evidence. *Yoos v. Jewish Hospital*, 645 S.W.2d 177, 185–87 (Mo.App.E.D.1982).

One could conclude that Dr. Resnick's testimony is contradictory. However, given our standard of review for summary judgment (recited above), we must conclude that Dr. Resnick's testimony sufficiently links Steven's flight from the police to Dr. Kusama's negligence. Nevertheless, as explained below, we do not find this linkage sufficient to satisfy the causation requirement.

### Causation Theory: Intervening and Superseding Causes

■ Causation, of course, is the element of the underlying medical malpractice action which is relevant to this appeal. To establish causation, the tortfeasor's conduct must be both the cause in fact and the proximate, or legal, cause of the plaintiff's injury. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852 (Mo. banc 1993). In all but those rare cases where two independent forces concur to cause an injury, causation, in fact, is evaluated through the familiar "but for" test; that is, it must be shown that, but for the tortfeasor's conduct, the injured party would not have been damaged. *Id.* at 860–61.

The second facet of causation is proximate cause, which is often described as a limitation on liability, absolving those actors whom it would be "unfair" to punish because of the attenuated relation which their conduct bears to the plaintiff's injury. *Id.* at 865. The most basic formulation of Missouri's proximate cause test is that conduct can constitute the proximate cause of any harm which is its "natural and probable result." *Id.* This has been described as a "look back" test, in which the naturalness and probability of the result is assessed from the point in time after the injury has occurred. *Id.* However, the Missouri Supreme Court has recently acknowledged that this test does contain a measure of foreseeability. *Id.* Foreseeability's role in the proximate cause analysis is widely understood as a limitation on liability.

*Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 289 (Mo.App.E.D.1983).

■ Whether proximate cause exists usually raises a jury question. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo.App.E.D. 1983). However, a court properly interposes its judgment in this determination when the evidence reveals the existence of an intervening cause which eclipses the role the defendant's conduct played in the plaintiff's injury. *See Clymer v. Tennison*, 384 S.W.2d 829 (Mo.App.W.D.1964).

■ Cause and effect in the instant appeal can be diagrammed in three stages. First, there is Dr. Kusama's withdrawal from Steven's care. Then, there is Steven's decision, when confronted by the police while in his parents' car without their permission, to flee. Finally, there is the collision with the concrete pillar, which is the immediate cause of injury. In prosecuting the underlying medical negligence action, respondent attempted to link Dr. Kusama's negligence directly to the immediate cause of injury by theorizing that Steven was suicidal, and when Dr. Kusama ceased treating his suicidal condition, he in fact committed suicide. But there was no evidence that Steven had crashed as a volitional act of self-destruction. Appellants contend that Dr. Kusama's liability could have been established regardless of the immediate cause of injury by adducing evidence that Steven would not have fled from the police but for Dr. Kusama's negligent treatment of him. It is the viability of this theory which is the crux of this appeal.

■ Steven's flight from the police, and the stimulus which caused Steven to crash into the post, are intervening causes of Steven's death. The mere existence of an intervening cause or causes does not necessarily absolve the original negligent actor from responsibility—especially in the age of comparative fault, it is normally the responsibility of a jury to decide how much blame the original actor should bear, if any. However, some intervening acts are "superseding causes;" that is, because they are independent of the original actor's negligence, they are held to sever the connection between the original

actor's conduct and the plaintiff's injury as a matter of law.

Appellants rightly point out that "an intervening cause insulating an original negligent tortfeasor from liability may not be one which is itself a foreseeable and natural product of the original negligence." *Jordan v. General Growth Development Corp.*, 675 S.W.2d 901, 903 (Mo.App.W.D.1984). Thus, as appellants contend, because there is substantial evidence, in the form of Dr. Resnik's testimony, that Steven's decision to flee from the police was a result of Dr. Kusama's negligence in failing to treat Steven for a panic disorder, Steven's flight cannot constitute a superseding cause.

■ But Steven's flight from the police was not the injury for which appellants sought to recover. Thus, they had to link the fatal collision to Dr. Kusama's negligence with substantial evidence, and this they have failed to do. If a prior and remote cause does nothing more than give rise to an occasion by which an injury is made possible, and there intervenes between that cause and the injury a distinct and unrelated cause of injury, a negligence action does not lie, even though the "but for" test is satisfied. *Clymer* at 835. While Dr. Resnik speculated that Steven might have crashed as a result of an untreated suicidal condition or panic disorder, he also conceded that it may have resulted from one of the passengers pulling at Steven, from Steven's inexperience as a driver, or a number of other causes unrelated to Dr. Kusama's negligence.

A passenger tugging at the steering wheel, for example, constitutes a superseding cause because it is independent of, and unrelated to, Dr. Kusama's failure to treat Steven. It might be true that the accident would not have occurred if not for Dr. Kusama's conduct, but this merely reverts the inquiry to causation in fact. It is also true that the accident would not have occurred in any event if Steven had not fled from the police, an occurrence for which Dr. Kusama could be held liable. But this merely means that the result of Dr. Kusama's negligence in turn caused a result, which is the fatal crash. The immediate cause of the crash (whatever it may have been) is, therefore, dependent on

and related to, the **result** of Dr. Kusama's negligence—not the negligence **in itself.**

This characterization of events comports with the relevant precedents. In *Dix v. Motor Market, Inc.*, 540 S.W.2d 927, 932–33 (Mo.App.E.D.1976), the defendant left her car, unlocked with the keys in the ignition, in a parking garage. A thief stole the car, and while speeding away, hit the plaintiff, injuring her. This court decided the case as a matter of law, ruling that the thief's negligence in speeding away from the garage and negligently hitting the plaintiff was an intervening cause which was independent and unrelated to the plaintiff's negligence in leaving her keys in the ignition of the unlocked car. Even though the defendant's negligence had brought about the state of affairs wherein the car could be stolen, it was theft itself— not the defendant's negligence—which occasioned the thief's reckless driving and hence plaintiff's injury. *See also Lavo v. Medlin,* 705 S.W.2d 562, 565 (Mo.App.E.D.1986).

■ It is true that the reasoning just expounded, under which the immediate cause of Steven's injury supersedes Dr. Kusama's role in Steven's death, is premised on the unproven (and indeed unprovable) assumption that the immediate cause of the accident was not an untreated panic attack or suicidal impulse. But in reviewing this complicated case for sufficiency of evidence, we must employ this assumption. The events that occurred inside the Oldsmobile and inside Steven's mind on the fateful night in question are not susceptible to definitive proof. Where evidence equally supporting two or more inconsistent and contradictory factual inferences as to ultimate and determinative facts is relied on to make a submissible case, there is a failure of proof. *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 880 (Mo.App.W.D.1985). For a jury to find in favor of appellants in this case, they would have to speculate that Steven crashed as a result of an untreated suicidal or anxiety condition. If a case is such that a verdict for the plaintiff would necessarily have to be set aside (as, for insufficiency of evidence), then the question should not be submitted to the jury at all. *Clymer* at 834. Such is the case here.

The trial court's grant of summary judgment for respondent is affirmed.

AHRENS, P.J., and GRIMM, J., concur.