Robert ESMOND, Appellant,

v.

BITUMINOUS CASUALTY
CORPORATION,
Respondent.

No. WD 57364.

Missouri Court of Appeals,
Western District.

May 31, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2000.

Steven Alan Ediger, Kansas City, for appellant.

Peter Joseph Dunne, St. Louis, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge ROBERT G. ULRICH and Judge JAMES M. SMART, Jr.

LAURA DENVIR STITH, Presiding Judge.

Plaintiff–Appellant Robert Esmond appeals the decision of the trial court dismissing his claim that he was entitled to recover uninsured motorist benefits under his employer's insurance policy with Defendant–Respondent Bituminous Casualty Corp. because he was injured as a result of an accident caused by an uninsured motorist while hauling compressors in the scope and course of his employer's business. We find that the court did not err in dismissing Mr. Esmond's claim in that his injuries were caused by his decision to lift the compressors after the accident was over, not by the use of the uninsured vehicle, and the negligence of the uninsured motorist was merely a remote condition for Mr. Esmond's injuries, not their proximate cause. Affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged in the Petition, and all favorable inferences from them, show as follows:

On November 20, 1996, Mr. Esmond was en route from New York to Missouri in a

pick-up with an attached trailer in which he was hauling a load of used air brake compressors. Both truck and trailer were owned by his Missouri employer, Air Brake Specialties, and insured through Bituminous Casualty Corporation for $50,000.00 in uninsured motorist coverage. A car Mr. Esmond was following suddenly and unexpectedly applied its brakes. Mr. Esmond was able to avoid hitting the unidentified motorist only by swerving onto the shoulder of the road and stopping. It is undisputed that Mr. Esmond was not injured in taking the evasive action to avoid a collision with the unidentified motorist, and there is no allegation of injury to the vehicle. The unidentified motorist did not stop after the incident and has not since been identified.

After the incident, Mr. Esmond suspected that his action of swerving off of the road to avoid the collision may have caused the load of compressors he was hauling to shift, so he exited the truck to inspect the compressors. Finding they had shifted, he decided to try to lift and reposition them himself. While lifting the compressors, Mr. Esmond herniated several discs in his spinal cord. This injury resulted in partial paralysis and loss of bowel and bladder control. Mr. Esmond incurred over $70,000 in medical bills for the treatment of these conditions.

Mr. Esmond filed a claim for uninsured motorist benefits under his employer's insurance policy with Bituminous. Mr. Esmond claimed that his injuries were caused by the negligence of the phantom driver and were, therefore, covered under the uninsured motorist provisions of the Bituminous policies. The Bituminous policies provided that:

> [Bituminous] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

It is not disputed that under the policy a phantom vehicle constitutes an "uninsured motor vehicle" if it "caused bodily injury to an insured." Bituminous nonetheless denied Mr. Esmond's claims because it did not believe that the incident involving the phantom vehicle constituted a proximate cause of his injuries. Mr. Esmond filed a Petition against Bituminous, alleging damages for breach of its contract to provide uninsured motorist coverage. Bituminous moved to dismiss Mr. Esmond's Petition for failure to state a claim, arguing that the uninsured motorist was not the cause of Mr. Esmond's injuries in that: (1) the uninsured vehicle was not the instrumentality which caused Mr. Esmond's injuries, and (2) Mr. Esmond's act of repositioning the goods severed the causal relationship with the uninsured motorist and was an independent cause of those injuries. On May 10, 1999, the trial court granted Bituminous' motion to dismiss and entered judgment in favor of Bituminous. Mr. Esmond appeals.

## II. STANDARD OF REVIEW

In reviewing a trial court's grant of a motion to dismiss, we assume as true all of plaintiff's averments, and all reasonable inferences therefrom, *Consolidated Financial Investments, Inc. v. Manion,* 948 S.W.2d 222, 223 (Mo.App. E.D.1997), and make no attempt to reweigh the credibility or persuasiveness of the facts alleged. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo. banc 1993). Instead, we review the Petition to determine whether the facts alleged, if proved, would entitle Plaintiff to relief. *Id.*

## III. LEGAL ANALYSIS

Essentially, Mr. Esmond's three points on appeal can be consolidated into a single argument: that his Petition adequately pled his injuries were "caused by" the use of the unidentified motorist's vehi-

cle. He notes that since he is suing his employer's insurer under the uninsured motorist provisions of his employer's insurance policy, his suit sounds in contract rather than in tort, and his rights and duties are therefore governed by the terms of the policy's uninsured motorist provisions. The relevant uninsured motorist provisions in the Bituminous policy provided that:

[Bituminous] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." *The damages must result from "bodily injury" sustained by the "insured" caused by an "accident."* The owner's or driver's liability for these damages must *result from the ownership, maintenance or use of the "uninsured motor vehicle."*

(emphasis added). The Bituminous policy included a "hit-and-run vehicle" within the definition of an "uninsured vehicle." It defined a "hit-and-run vehicle" as:

[A vehicle where] neither the driver nor owner can be identified. *The vehicle must* either: (1) Hit an "insured," a covered "auto" or a vehicle an "insured" is "occupying;" or (2) *Cause "bodily injury" to an "insured" without hitting an "insured,"* a "covered auto" or a vehicle an "insured" is "occupying."

(emphasis added).

It is undisputed that the uninsured vehicle did not hit the insured or his vehicle. The issue presented is whether Mr. Esmond's activities, after the uninsured vehicle left the scene of the accident, in exiting his truck, opening his trailer, checking on the load of compressors in his trailer, and then lifting and repositioning the compressors on his own, came within the policy's definition of "use of the uninsured vehicle," and whether use of that uninsured vehicle caused bodily injury to Mr. Esmond.

Here, Mr. Esmond argues that his underlying claim for injuries did result from use of the uninsured motor vehicle because "but for" the sudden negligent stop of the

uninsured vehicle, he would not have had to swerve the truck to avoid a collision, and thus, he would not have needed to rearrange the compressors and, ultimately, would not have injured his back. Mr. Esmond asserts two grounds on which that this relationship provides a sufficient nexus between the uninsured vehicle and his injuries so that the policy must be found to provide coverage.

First, he alleges that, even if the negligence of the uninsured motor vehicle is not the proximate cause of his injuries under principles of tort law, the term 'use of the uninsured vehicle,' for purposes of liability coverage under an automobile policy is interpreted more broadly than it is in tort law, and requires only some lesser causal connection between the injury and the use of an automobile in order for there to be recovery.

Mr. Esmond is correct that, in *Schmidt v. Utilities Ins. Co.,* 353 Mo. 213, 182 S.W.2d 181, 185 (1944), our Supreme Court held that the phrase "use of a motor vehicle" in an insurance policy such as this means growing out of or having its origin in use of the vehicle, and thus may be broader than proximate cause in its meaning. Other courts have followed *Schmidt* in recognizing that "use" of a motor vehicle may cover a greater range of injuries than would be covered under a traditional proximate cause analysis under tort law.

We disagree, however, that these cases provide Mr. Esmond with a basis for asserting a claim here. In *Schmidt,* the plaintiff was injured when he tripped over blocks left on the sidewalk by truck drivers, who used the blocks to assist them in setting up a ramp which they could use to load and unload their truck. The court found that, under the policy, unloading the truck came within the definition of use of the truck, and that use of the blocks was a part of the unloading process, so that the injury caused to the plaintiff when he tripped over the blocks after the drivers left them on the sidewalk could be said to

arise out of the use – that is, the unloading—of the vehicle. 182 S.W.2d at 184–85.

Similarly, in *American Family Mut. v. Shelter Mut. Ins.*, 747 S.W.2d 174 (Mo. App. W.D.1988), this Court held that an injury could be held to arise out of the use of a motor vehicle where the injury occurred when the plaintiff was helping the vehicle's driver unload a transmission from a truck and the transmission fell on his hand and severely injured it while he was in the process of carrying the transmission down the driveway from the truck to the body shop. The court held, relying on *Schmidt*, that the dropping of the transmission was incident to the unloading of the truck, and since unloading was a part of the use of the truck to carry the transmissions, it was covered under the policy. *American Family*, 747 S.W.2d at 177–78. *See also Pope v. Stolts*, 712 S.W.2d 434, 436 (Mo.App. E.D.1986) (injury occurring while leaning over insured vehicle to jump start it was included within use of that vehicle).

In sum, these and similar cases hold that, where an injury arises out of a covered use of a motor vehicle, then the injury will be covered by the policy, even if the vehicle did not itself cause the injury or the injury did not occur while the plaintiff or another was driving the vehicle. These cases would be applicable if the issue before us were whether the injury arose out of Mr. Esmond's use of his employer's motor vehicle. Under the above cases, it is evident that he was using the motor vehicle to transport the load of compressors, and that in order to make this use of the vehicle he had to load and secure the compressors. Thus, his injury in repositioning the load would appear to come within the definition of use of his employer's vehicle.

Here, however, he asserts that his injury arose out of the use of the *uninsured motor vehicle*, not out of the use of his employer's vehicle. The only connection between the uninsured motor vehicle and Mr. Esmond's injury was the alleged negligence of the driver in suddenly stopping, thus causing Mr. Esmond to swerve and come to a stop on the shoulder of the road. His injury did not arise from any loading or unloading of the uninsured motor vehicle, from leaning in or upon it to repair or start it, or from some other action which can be considered to come within a broad definition of "use" of that uninsured vehicle. It came about from use of the employer's vehicle, and from attempting to move the compressors in his employer's vehicle. Thus, the above cases are not applicable.

■ Even were we to find that Mr. Esmond's injuries arose out of use of the uninsured vehicle, however, in order to be entitled to recover in a case such as this one where the vehicle is considered uninsured because it was a hit and run vehicle, the policy also requires that "The vehicle must either: (1) Hit an 'insured,' . . . or (2) Cause 'bodily injury' to an 'insured' without hitting an 'insured,' . . .". Here, the hit and run vehicle did not hit Mr. Esmond's vehicle, but rather caused him to swerve and go off of the road. Thus, in order to be entitled to benefits, he must show that the uninsured motor vehicle was the cause of his bodily injury.

Mr. Esmond alleges that the uninsured motorist's negligence was the cause of his injuries in that, but for that negligence, he would not have swerved, the compressors would not have shifted, and he would not have injured himself moving them. While we agree that this "but for" analysis shows there is *some* causal relationship between the alleged events, we do not agree that it establishes that the uninsured motorist was the *proximate cause* of the injury. In order to be entitled to recover from Defendant, Mr. Esmond must show not only that "but for" the phantom driver's negligence, the accident would not have occurred, but also that the phantom driver's negligence was the *proximate cause* of his injuries. *See, e.g., Schaffer v. Bess*, 822 S.W.2d 871, 876 (Mo.App. E.D.1991). In order to determine whether the accident was the

proximate cause of Mr. Esmond's injury, we look not to see whether the injury was one which the tortfeasor could have foreseen at the time of the accident, but "whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the defendant's act or omission." *Freeman v. K & K Car Repair, Inc.*, 659 S.W.2d 296, 298 (Mo.App. E.D.1983). As we noted in *Van Vacter v. Hierholzer*, 865 S.W.2d 355, 358 (Mo.App. W.D.1993):

> "Proximate cause" – in itself an unfortunate term – is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond.... As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.

*Id.* at 358, *quoting,* W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, Sec. 41, at 264 (5th ed.1984). *See also Stroot v. Taco Bell Corp.*, 972 S.W.2d 447 (Mo.App. E.D.1998). Because the resulting injury must be the natural and probable result of a defendant's act, an element of foreseeability exists in the analysis. *Id.; Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1990).

■ The determination of the proximity of the causal relationship between the negligence and the injury is dependent upon the particular facts of each case, and so is generally an issue reserved for the trier of fact. *Id.* A court may decide the issue of proximate cause as a matter of law if the evidence reveals the existence of an intervening cause which eclipsed the role of the original actor's negligence in the plaintiff's injury. *Buchholz v. Mosby–Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo. App. E.D.1998). An intervening cause will not preclude liability if it "is itself a fore-

seeable and natural product of the original negligence." *Tompkins*, 917 S.W.2d at 191. And, as noted by Mr. Esmond, it will not do so if it constitutes an act of the plaintiff himself which is a foreseeable consequence of the original act of negligence, for the foreseeable negligence of the plaintiff is viewed as concurring or contributory negligence. *Buchholz*, 969 S.W.2d at 862; *Schaffer*, 822 S.W.2d at 877.

■ But, as we noted in *Tompkins*, "some intervening acts are 'superceding causes;' that is, because they are independent of the original actor's negligence, they are held to sever the connection between the original actor's conduct and the plaintiff's injury as a matter of law." *Id.* at 190–91. In particular, "[n]egligent conduct which sets in motion a series of events leading to an injury can be interrupted by an intervening cause which so interrupts the chain of events as to become the responsible, direct, proximate cause of the injury." *Van Vacter v. Hierholzer*, 865 S.W.2d at 358. Such conduct renders any prior negligence too remote to operate as to the proximate cause. *Metzger v. Schermesser*, 687 S.W.2d 671, 673 (Mo.App. E.D. 1985).

Particularly relevant here are the numerous Missouri cases holding that:

> Prior and remote cause cannot be made the basis of a negligence action if the remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, and there intervened between that cause and the injury a distinct, successive, unrelated and efficient cause of the injury, though the injury would not have occurred but for the condition or occasion.

*Van Vacter*, 865 S.W.2d at 359, *quoting, Phillips v. United States*, 743 F.Supp. 681, 686 (E.D.Mo.1990). *Accord, Duke v. Missouri Pacific R. Co.*, 303 S.W.2d 613, 617 (Mo. banc 1957); *Christie v. Weber*, 661 S.W.2d 840, 843 (Mo.App. E.D.1983); *Freeman*, 659 S.W.2d at 298; *Clymer v.*

*W.B. Tennison,* 384 S.W.2d 829, 835 (Mo. App. W.D.1964).

The application of these principles in *Freeman* is quite instructive. Defendant was hauling large drums loaded with kitchen fat in the back of his employer's truck. He stopped suddenly on an incline, and the tailgate came open. Ten of the drums fell out, and three or four of them came open, spilling kitchen fat into the street. A number of people, including plaintiff, helped defendant reload the drums onto his truck. As plaintiff and defendant picked up one drum and began to lift it, defendant suddenly released his end, so that plaintiff bore the total weight of the drum, causing plaintiff severe back injury. Plaintiff sued defendant on two theories: (1) that defendant was negligent in not properly latching the tailgate, thereby allowing the drums to fall out of the truck; and (2) that defendant was negligent in dropping his end of the drum.

*Freeman* held that it was proper to submit the question whether the sudden dropping of the drum was negligent, causing plaintiff's injury, but that it was error to submit the issue whether defendant was negligent in failing to better secure the tailgate, stating:

> *failure to secure the tailgate should be looked upon as a prior and remote cause* of the injury and cannot be made the basis of an action if it did nothing more than furnish the condition or give rise to the occasion which made the injury possible.... *Although the injury would not have occurred but for [defendant's] original act, plaintiff's distinct and successive act of helping to reload the truck clearly intervened and interrupted the chain of events,* thus making [defendant's] act of dropping the drum the proximate cause. We simply cannot find that a back injury is the reasonable and probable consequence of an individual's failure to secure the tailgate of a truck.

*Freeman,* 659 S.W.2d at 298 (emphasis added).

*Clymer* is also instructive. In that case, plaintiff was helping move hay to defendant's barn for storage. The hay was lifted into the barn loft via a mechanical carrier that ran on ropes and pullies attached to a v-shaped track on the ceiling of the barn. The track had a "stop" on it that engaged with a U clamp, or "shoe," on the carrier. On the day of the accident, the men pulled the loaded hay carrier too far and hard against the stop, causing the carrier to knock the stop off of the assembly and the hay carrier and hay to fall to the ground. No one was injured. The workers, but not defendant, then put the assembly back together, but in so doing did not realize that they had forgotten to reinstall the all-important "shoe" stop. As a result, when they got the carrier back on the track and again began to move the hay, the carrier fell off of the track because the stop could not operate to prevent it from doing so in the absence of the shoe mechanism. Plaintiff was injured by parts of the falling mechanism.

Plaintiff sued defendant, alleging that his negligence in failing to adequately secure the stop at the north end of the barn caused the first accident. He argued that as a result of this negligence, he and his co-workers had to reassemble the connection and get the carrier back on the track, and so defendant's original negligence was ultimately responsible for his injury when, due to their failure to resecure the track properly, it fell to the floor again and he was injured.

*Clymer* rejected this argument. Relying on cases setting out the principles stated above concerning the distinction between remote and proximate causes, it held that:

> it is our view that the occurrence, whether or not caused by defendant's negligence, was only a remote or predisposing cause, that it merely produced a condition giving opportunity for other causal agencies to act, and that it has no

legal causal connection with plaintiff's accident and injury.

*Clymer,* 384 S.W.2d at 835. The court continued, "[i]t appears from uncontroverted evidence that the incident terminated without producing injury to plaintiff or damage to the devices on the south end of the track, and that new forces and agencies arose and actively intervened as independent, efficient and legally proximate causes of the casualty, the first of which was the unskillful reassembly of the carrier on the track without the essential shoe." *Id.*[1]

These principles are directly applicable here. The phantom driver's act of stopping was a remote rather than a proximate cause of Mr. Esmond's back injury. When a person suddenly stops in a lane of traffic, thereby causing a vehicle following behind to take evasive action to avoid a rear-end collision, it is reasonable and probable that the driver of the vehicle may swerve off of the road to avoid the collision. It is also reasonable and probable that the driver avoiding the collision may lose control of his vehicle in taking the evasive action, and thus, ultimately hit another vehicle or some object before reaching a point of safety. And if, as a result of the swerving and stopping on the shoulder, the load had become unbalanced and caused the truck to tip over, or the load to fall on Mr. Esmond, then the negligence could be said to be the proximate cause of his injuries.

Here, however, when the uninsured vehicle suddenly stopped, Mr. Esmond was able to reach a position of safety and actually stop the truck without injury. The negligence of the driver of the uninsured vehicle thus put Mr. Esmond in the position of being at a site off of the side of the road, but left him and the truck uninjured. Mr. Esmond made an independent decision to check on the load of compressors, and to attempt to lift and reposition them himself rather than obtain help. It was this independent act of Mr. Esmond in trying to move the compressors that caused the injury to his back. The alleged negligence of the uninsured motorist which caused Mr. Esmond to swerve was too remote, and his act of attempting to move the compressors on his own after he was in a position of safety cannot be viewed as the natural and probable consequence of the uninsured vehicle's act of stopping in a lane of traffic.

For all of these reasons, the judgment is affirmed.

Judge ROBERT G. ULRICH and Judge JAMES M. SMART, Jr. concur.

---

1. *See also, Duke,* 303 S.W.2d at 617 (where after negligence of defendant in allowing rope to be pulled and stage to become insecure, the parties were in a position of safety and no danger to plaintiff existed except because of a later independent act of negligence in seeking to correct the problem caused by the original negligence, the original negligence was only a remote, not a proximate, cause of the injury); *Tompkins,* 917 S.W.2d at 190–91 (negligence in allowing psychotic patient to flee was simply a prior and remote condition giving rise to the occasion which made the injury possible, not the proximate cause of the injury, even though injury would not have occurred "but for" negligence in allowing him to flee); *Christie,* 661 S.W.2d at 843 (plaintiff's injury was caused by negligent repair of bench and its connections to wall, and original negligence of defendant in inadequately designing bench and improperly securing it to wall was only remote cause of injury); *Lewis v. Esselman,* 539 S.W.2d 581, 582–83 (Mo.App. E.D. 1976) (where plaintiff stopped to help those injured in accident with defendant, and was then hit by a car when standing next to his vehicle because the driver was looking at the accident and did not see him, the independent negligence of driver was a superceding cause and defendant's negligence was merely a remote, not a proximate, cause).