Ina Carole LONDON, Plaintiff/Appellant,

v.

Bernard WEITZMAN,
Defendant/Respondent.

No. 63506.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 3, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 6, 1994.

Laurence D. Mass, Donna Aronoff Smith, St. Louis, for plaintiff, appellant.

Lawrence B. Grebel, St. Louis, for defendant, respondent.

CARL R. GAERTNER, Judge.

In this action seeking damages for legal malpractice, the jury assessed plaintiff's damages at $500,000 and assessed fault at 60 percent against defendant and 40 percent against plaintiff. Both plaintiff and defendant filed motions for judgment notwithstanding the verdict (JNOV). The trial court denied plaintiff's motion but granted that of defendant. Plaintiff appeals. We reverse.

Although much of the testimony in the case was in sharp contradiction, our consideration of the evidence is clear. Because a motion for judgment notwithstanding the verdict presents the issue of whether the plaintiff made a submissible case, we review the evidence in the light most favorable to the plaintiff's case and accord her all reasonable beneficial inferences which can be drawn from the evidence. *Jamrozik v. M.T. Realty & Investment Corp.*, 843 S.W.2d 394, 395 (Mo.App.1992). We disregard defendant's evidence except to the extent it supports the verdict. *Hinton v. State Farm Mutual Automobile Ins. Co.*, 741 S.W.2d 696, 700 (Mo. App.1987). We state the facts in accord with these principles.

The thirty-two year marriage of plaintiff Ina Carole London, and Norman London was dissolved by decree of the Circuit Court of Cole County on June 29, 1984. During the early years of the marriage, plaintiff was a homemaker and raised two children while Mr. London developed a successful practice in the field of criminal law. When the children were older, plaintiff worked as a travel agent and for several years operated her own travel agency which was financed by her husband. This agency was sold in 1978 and the proceeds of the sale were retained by plaintiff's husband. Thereafter, plaintiff had two brief periods of employment in the field of hotel management during 1979 and 1981. During the time plaintiff operated her travel agency, she engaged in one incident of marital infidelity while on a trip to Europe. Although aware of the incident, her husband did not want to end the marriage until plaintiff insisted upon a divorce in 1984. On the other hand, plaintiff testified that her husband's persistent heavy drinking and violent displays of temper contributed to the break-up of the marriage.

By late 1983, after several attempts to resolve their problems by consultation with marriage counselors, plaintiff was living almost full-time at the home they had built in Scottsdale, Arizona, while her husband was continuing his full-time law practice in St. Louis and sporadically visiting his wife. She wrote her husband a letter in which she stated "our marriage is over." Although he neither wanted or asked for a divorce, he called her and said she should file for divorce.

Plaintiff testified that throughout the marriage she had, without objection on her part, been "kept in the dark" about finances. She had no idea of what her husband's income was nor did she have any information concerning investments. Her husband gave her $3,000 or $4,000 per month to operate the household, and she was content not to make any inquiry about financial matters.

On the advice of a friend's husband, a stockbroker, she prepared a list of her yearly expenses which totaled $47,143.70. This figure was low because of some expenses, such as property taxes, insurance, and medical expenses, which her husband always paid. The broker provided her with two alternatives which he stated would supply her with an income of $40,000 to $42,000 per year: 1) a property settlement of $500,000 to be paid over a period of two or three years, or 2) a lump sum cash payment of $250,000, the house in Arizona, maintenance of $30,000 for 10½ years, and maintenance thereafter of $10,000 per year.

By telephone plaintiff retained Mr. Gerald Rimmel, a St. Louis attorney, to represent her in the dissolution proceeding. She sent him her expense list and the two proposals outlined by the stockbroker and asked him to obtain information concerning marital assets and her husband's income. Plaintiff then called her husband and told him she had retained a lawyer. He flew to Arizona and persuaded her to fire Mr. Rimmel. He told plaintiff that if a hostile attorney forced a public revelation of his financial condition, serious consequences could result. Her husband dictated a letter discharging Mr. Rimmel which she typed and mailed. Her husband then recommended that she retain defendant, Bernard Weitzman, who was an old friend. Defendant had been the best man for her husband at their wedding. Her husband contacted defendant and made arrangements for her to be represented.

Plaintiff talked to defendant concerning the divorce on two occasions. Somehow defendant had obtained the information she had mailed to Mr. Rimmel. In their first conversation, defendant told plaintiff that the $500,000 proposal was "way too much based on what Norman had" and the second alternative was much more reasonable. Defendant told plaintiff that she could never get more than that because the law passed in 1974, due to "woman's lib", actually hurt a wife's ability to obtain alimony. He told plaintiff the second alternative was very generous. In their second conversation, defendant told plaintiff her husband had agreed to the second proposition. He assured her that it was more than

fair. At no time did defendant tell plaintiff that he would not represent her if there was any dispute with her husband. She never received a list of her husband's assets. She signed and returned the petition for dissolution and a separation agreement which defendant mailed to her.

She acceded to her husband's wish to have the court proceeding in Jefferson City in order to avoid publicity. She flew to St. Louis on June 28, 1984, and plaintiff, her husband, and defendant drove together to Jefferson City the next day. Her husband told her the judge would ask her some questions and she should answer "yes" to whatever he asked. She did so. She signed a number of papers but did not read them. Defendant did not explain any of the papers to her.

If plaintiff had been told that her husband's income in 1984 was $505,000, over $300,000 the year before that and over $600,000 before that, she would not have agreed to settle for $30,000 per year for ten years. If she had been advised that the marital assets totaled $1,840,000 plus the $250,000 paid to her as her share of the marital property, she would never have agreed to settle for what she did.

Defendant admitted he never gave plaintiff any advice regarding her rights under the laws of Missouri. He knew from plaintiff's letter to Mr. Rimmel that she had been kept in the dark about financial matters and had requested that Mr. Rimmel obtain tax returns and other financial information from her husband. He did not tell the dissolution judge that he considered himself a mere scrivener and he had not given plaintiff any advice. He never obtained any information concerning plaintiff's husband's income and, although required by local court rule, he did not file a statement of income and expenses for either party.

As mentioned above, this evidence was sharply disputed by defendant. However the jury resolved this dispute by finding in favor of plaintiff and assessing her damages at $500,000. The jury assessed forty percent fault against plaintiff, and the court entered judgment of $300,000. Defendant filed a motion for judgment notwithstanding the ver-

dict. Plaintiff filed a similar motion, asking the trial court to set aside the submission and finding of comparative fault and to enter judgment for the full amount of the verdict. She also moved for pre-judgment interest. Neither party filed a motion for new trial. The trial court sustained defendant's motion for JNOV and denied plaintiff's motions.

## I.

### Submissibility

 It is well-established in Missouri that a plaintiff seeking to recover damages for legal malpractice must prove: 1) that the defendant lawyer was negligent by showing that he or she failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession; 2) that plaintiff sustained some loss or injury; and 3) a causal connection between the negligence and the loss. *Rodgers v. Czamanske,* 862 S.W.2d 453, 458 (Mo.App.1993); *Cain v. Hershewe,* 760 S.W.2d 146, 149 (Mo.App.1988); *Pool v. Burlison,* 736 S.W.2d 485, 486 (Mo.App. 1987). To prove damages and causation, the plaintiff must establish that "but for" the attorney's negligence the result of the underlying proceeding would have been different. *Rodgers,* 862 S.W.2d at 458; *Bross v. Denny,* 791 S.W.2d 416, 421 (Mo.App.1990).

 In a written memorandum of law filed with his order sustaining defendant's JNOV motion, the trial judge acknowledged that plaintiff had produced evidence sufficient to establish all three elements of legal malpractice. The motion was sustained solely on the ground that the plaintiff failed to prove a specific amount of damages with reasonable certainty. In so ruling, the court misconstrued the rule against speculative damages which relates not to the difficulty in calculating the amount of damages but to the more basic question of whether there are specifically identifiable damages. The rule is well-stated by R.E. Mallen and J.M. Smith, *Legal Malpractice,* Volume I, § 16.3 (3d Ed.1989):

> In a legal malpractice action, a court may be tempted to characterize the plaintiff's damage claim as speculative because

of the difficulty in liquidating the claim. This is because legal malpractice litigation often involves hypothetical questions which have real consequences. For example, how much did the client lose when the lawsuit was not prosecuted? Or, how much better off would the client have been had the suit been defended or been defended more competently?

No one can say precisely what the plaintiff lost or should have lost in such situations, but difficulty or imprecision in calculating damages does not exculpate the attorney. Even though damages cannot be calculated precisely, they can be estimated. Otherwise, attorneys could avoid liability merely because damages are difficult to measure. The beneficiaries would tend to be those attorneys whose errors were the greatest and whose conduct succeeded in complicating the issue of calculating the extent of the client's injury.

Thus, damages are speculative only if the uncertainty concerns the fact of whether there are *any* damages rather than the amount.

Plaintiff's expert witness, Allen Russell, an attorney experienced in the field of family law, testified that the process by which a dissolution court divides marital property begins at the point of a 50/50 split. The division may be affected by marital misconduct which has led to the breakup of the marriage or has imposed an undue burden upon the relationship. However, where the injured party wants to continue the marriage even after the misconduct of the other party, such misconduct would not normally be considered. Mr. Russell further testified that in advising plaintiff to accept a settlement of twenty percent of the marital assets defendant failed to exercise the appropriate standard of care that an attorney must meet. This evidence was sufficient to permit the jury to find the existence of identifiable damages caused by defendant's professional negligence and to make an informed estimate of the amount of plaintiff's damages. *Bross v. Denny,* 791 S.W.2d at 421. The trial court erred in refusing to allow plaintiff's expert to express an opinion based upon his years of experience regarding what a fair and equita-

ble distribution of marital property would be under all of the facts and circumstances shown in evidence. *Id.* Moreover, the trial court erred in ruling on the motion for JNOV that such testimony was an essential element of plaintiff's case. The order granting defendant's motion for JNOV is reversed.

## II.

### Comparative Fault

Plaintiff's second point on appeal charges trial court error in overruling her motion requesting the court to enter judgment in the full amount of the jury's assessment of damages without reduction for comparative fault. She alleges the court erred in submitting an issue of comparative fault on the theories advanced by defendant.

■ It is important to bear in mind that in addressing this issue we are concerned only with the question of submissibility of the issue of comparative fault. Much of plaintiff's argument on the point is directed toward challenging the three disjunctive theories submitted to the jury in defendant's comparative fault instruction patterned after MAI 32.01(2), which reads as follows:

In your verdict you must assess a percentage of fault to plaintiff, if you believe:

First, plaintiff failed to inform defendant she did not know her marital rights, or plaintiff fired Gerald Rimmel as her lawyer at her husband's request and hired defendant knowing a settlement had not been reached, or

plaintiff agreed to the terms of the separation agreement without knowing her marital assets or her husband's income, and

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may be (sic) sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinary careful and prudent person would use under the same or similar circumstances.

We agree with plaintiff's contention that the instruction is erroneous. Plaintiff's failure to inform defendant she did not know her marital rights, assuming she had some duty to do so, could not have been a proximate cause of her damages. It is undisputed that defendant possessed a copy of plaintiff's letter to Mr. Rimmel advising him that she had been kept in the dark regarding financial affairs and requesting that he find out about her husband's income and the marital property. Her failure to advise defendant of what he already knew is not negligence contributing to her loss. Furthermore, firing Mr. Rimmel was antecedent to, not contributory with, the negligence of defendant as a causative factor. *See, Van Vacter v. Hierholzer,* 865 S.W.2d 355, 358 (Mo.App.1993).

However, neither in the trial court nor before this court has plaintiff requested a new trial because of the erroneous instruction. Rather, she seeks only to have the judgment assessing a percentage of fault against her set aside. For this purpose our concern focuses on the submissibility of the issue of comparative fault and whether any one of defendant's theories was supported by the evidence and was sufficient in law to warrant the assessment of a percentage of fault against plaintiff.

■ By her own admission, plaintiff agreed to the terms of the separation agreement without knowing about the marital assets or her husband's income. She was under no compulsion to do so until defendant obtained and furnished her with the information which she now claims it was his duty to provide. The jury could have found that by willingly bringing the dissolution proceeding to a conclusion without sufficient knowledge or information with which to determine the fairness of the settlement agreement plaintiff failed to exercise that degree of care that an ordinarily careful and prudent person would have exercised under the same or similar circumstances. The verdict of the jury finding plaintiff was forty percent at fault is supported by the law and the evidence. Point denied.

## III.

### Prejudgment Interest

■ In plaintiff's final point on appeal, she claims entitlement to prejudgment interest

because she would have received interest on any unpaid amount of the dissolution award from the date of the dissolution. This novel argument overlooks the fact that the amount of damages she claimed in her amended petition, the difference between what she received and an equitable share of marital assets, and a just and adequate award of maintenance are not fixed, pre-determinable sums. As a general rule, interest is not recoverable on an unliquidated claim. *Catron v. Columbia Mutual Ins. Co.*, 723 S.W.2d 5, 6 (Mo. banc 1987); *Ohlendorf v. Feinstein*, 670 S.W.2d 930, 936 (Mo.App. 1984). Nothing in this case brings it within any recognized exception to the general rule, nor did plaintiff seek to invoke § 408.040.2 RSMo. (Cum.Supp.1993) by making a record of a specific pre-trial demand for settlement. Finally, plaintiff did not pray for interest in her amended petition. Point denied.

## IV.

In the respondent's brief, defendant raises an additional point in an effort to salvage the JNOV. He contends that contributory negligence, not comparative fault, is the appropriate affirmative defense in a case involving economic loss. Therefore, he asserts, plaintiff's right of recovery is fully barred because the jury assessed a percentage of fault against her.

██ The legal file reflects that defendant offered the comparative fault affirmative defense instruction, MAI 32.01(2), given by the court. The record does not contain any proffered instruction on the defense of contributory negligence which was refused. Defendant cannot be heard on appeal to complain of the theory of defense he chose to submit to the jury. Point denied.

The judgment of the trial court is reversed, and the cause is remanded with directions to reinstate the judgment in favor of plaintiff in the amount $300,000 plus costs. Costs on appeal assessed against defendant.

GRIMM, P.J., and AHRENS, J., concur.