Ed ENGLISH, Plaintiff–Respondent,

v.

EMPIRE DISTRICT ELECTRIC COMPANY, INC., Defendant–Appellant.

No. 27411.

Missouri Court of Appeals,
Southern District,
Division One.

April 23, 2007.

Thomas C. Walsh, St. Louis, John S. Dolence, Joplin, for Appellant.

Michelle Boehm O'Neal, Alison Hershewe, Joplin, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Empire District Electric Company, Inc. ("Appellant") appeals from a judgment rendered against it for actual and punitive damages as a result of an accident, which occurred on October 11, 1995, on a construction site in Webb City, Missouri. Ed English ("English") was electrocuted and suffered significant injuries when he came in contact with two energized lines hung by Appellant. Appellant brings three points on appeal: (1) quarreling with a claimed evidentiary ruling; (2) claiming error in the refusal to submit a jury instruction; and (3) challenging the award of prejudgment interest. We affirm the judgment awarding damages; however, we reverse the award of prejudgment interest.

## FACTS

Because Appellant does not challenge the sufficiency of the evidence, we state the facts in the light most favorable to the judgment. English was one of two workers injured when the scaffolding he was holding inadvertently contacted an energized 69,000 volt power line, owned and maintained by Appellant, at the Ramey's Supermarket in Webb City, Missouri. Appellant has been in the business of producing, transporting, and selling electrical power in southern Missouri since the early 1900's and has long known that unplanned and accidental contact with energized wires and electrocutions often occur at construction sites because many people believe that electrical lines are insulated when, in fact, they are not.

The evidence indicated that in the ten-year period before this incident, Appellant acknowledged numerous accidental contacts with its electrical lines, including contacts causing six deaths and ten serious injuries, as well as thirty-two power line "hits" and three hundred thirty "close calls." Almost all of these accidental contacts or "hits" occurred at construction sites. Appellant's Director of Commercial Operations had investigated more than ten accident scenes involving the same kind of electrical hits. There was also testimony from Appellant's Director of Engineering and corporate representative that one such accident, also involving a forklift, occurred less than two months before English's incident.

The jury heard evidence that, unlike other hazards, electricity is an invisible and undetectable danger. Human factors studies have born out that power lines are difficult to see as, depending upon sky and lighting conditions, power lines are known to fade into the background and become less visible to those on the ground nearby. There are three recognized measures that

can be implemented to protect against the hazard of accidental contact: eliminate the hazard, guard against the hazard, or warn of it.

There was testimony that Appellant knew that serious injuries and deaths often occur during accidental contact because workers often have trouble judging their distance to overhead power lines, even when they are trying to be careful. That knowledge came from various sources including government bulletins from the National Institute for Occupational Safety and Health ("NIOSH"). The bulletins reminded Appellant that many contractors and construction workers were unaware and may not understand the danger of contacting uninsulated power lines with scaffolding, cranes and other construction equipment. NIOSH recommended that information be given to contractors regarding these dangers and even urged electric utility companies to distribute NIOSH's recommendations on the hazards of working around energized lines.

Appellant received overall site plans from the architect before construction on the supermarket began. The architect asked Appellant if a pole could be moved ten feet to accommodate the parking lot and driveway construction, which would cause the site elevation to rise approximately three feet on the architectural drawings. Appellant acknowledged that this type of increase in site elevation was not uncommon based on its own experience selling electricity at construction sites. Appellant did not raise, move, or de-energize the lines during the construction project.

English's claim was premised on Appellant's failure to eliminate, guard or warn of the risk of accidental contact with its energized lines despite actual knowledge of the construction and tall equipment being used. Appellant did not move for a direct-ed verdict at the close of all the evidence, nor do they contend in this appeal, that English failed to prove a submissible case.

## POINT I

■ Appellant contends in Point I that the trial court "abused its discretion in refusing to permit [Appellant] to adduce evidence of [English's] blood alcohol content because such evidence was relevant to the pleaded issue of [English's] responsibility for the accident." To support its point, Appellant apparently relies upon pretrial rulings of the trial court for its proposition because it fails to direct this Court to any specific testimony that was refused by the trial court. Instead, it cites to a discussion during a pretrial conference prior to voir dire between English's counsel ("Counsel") and the court for the proposition that "[i]t was undisputed that emergency room personnel who treated [English] after his accident performed a procedure that revealed his blood still contained .05% alcohol."

Appellant is incorrect in its factual and legal analysis. The nature and results of any "procedure," as well as the relevance of the evidence, were disputed. Counsel stated that any testing was done incorrectly and further noted that there was no medical testimony that English's consumption of alcohol had anything to do with the injury. What is undisputed is that Appellant did not plead or claim that consumption of alcohol by English caused or contributed to cause the accident. It is also undisputed that no specific testimony or offer of proof was introduced at trial. Appellant argued to the court at the pretrial conference that the jury should consider whether evidence of alcohol consumption impacted English. The trial court judge stated he would revisit the issue at a later time, but for the purposes of voir dire and

opening statement he did not want any references made to the actual test results.

The only other discussion cited by Appellant concerning alcohol consumption by English occurred during a consideration of Counsel's pretrial motions. Again, in this appeal Appellant cites to a discussion between Counsel and the court concerning the purported blood alcohol test. After a discussion of several pretrial motions, the trial court indicated, "Unless [Appellant] can show that they've got somebody that says that [English] was somehow impaired by that, that's not coming in." The court indicated it would allow other testimony concerning English's alcohol consumption.

■ Although Appellant for the first time in its reply brief admits that it failed to make an offer of proof, it contends that English is seeking to avoid meaningful scrutiny of those points by invocation of "procedural technicalities." Appellant fails to understand that we are courts of review. *In re Marriage of Parmenter*, 81 S.W.3d 234, 240 (Mo.App. S.D.2002) ("Appellate courts are merely courts of review for trial court errors, and there can be no review of a legal proposition which was not presented to or expressly decided by the trial court."). We review for trial court error. One of the reasons we limit our review of a ruling on a motion in limine is because the trial court can and should consider the admissibility of the evidence adduced at trial. *State v. Norville*, 23 S.W.3d 673, 685 (Mo.App. S.D.2000). Only then can the trial court evaluate the logical and legal relevance of the evidence. *See Id.* ("[A] trial judge should be given an opportunity to reconsider his prior ruling [on a motion in limine] against the backdrop of the evidence adduced at trial.").

■ To be clear then, Appellant is claiming error in a pretrial ruling on a motion in limine. Although Appellant states, "the trial court abused its discre-

tion," the correct standard is that the trial court "clearly erred" or committed "plain error" in its ruling because a ruling on a motion in limine " 'is merely a preliminary expression of the court's opinion as to the admissibility of the evidence.' " *Portis v. Greenhaw*, 38 S.W.3d 436, 447 (Mo.App. W.D.2001) (quoting *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App. E.D.1998)). "[T]he court can change its ruling anytime during the trial if presented with proper circumstances." *Id.* It is incumbent upon the party seeking to preserve the excluded evidence for purposes of appeal to make an offer of proof at trial demonstrating why the evidence is relevant and admissible. *Id.* Without a specific and definite offer of proof, appellate courts will not generally review excluded evidence except for plain error. *Frank v. Environmental Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985).

■ Plain error review is used only rarely in civil cases "where the error affected substantial rights and a manifest injustice or miscarriage of justice resulted therefrom." *Ruzicka v. Ryder Student Transp. Services, Inc.*, 145 S.W.3d 1, 15 (Mo.App. S.D.2004). "[N]ot all error, even if prejudicial, is plain error." *In re Estate of Werner*, 133 S.W.3d 108, 111 (Mo.App. W.D.2004). Plain error review requires this Court to examine the matter on its face, and proceed with review only if the court discerns a substantial ground for believing that manifest injustice or a miscarriage of justice has resulted. *Id.* If the claim is not facially established, the court should decline to exercise its discretionary review. *Id.*

Appellant argues that the substance and content of the rejected evidence was that English's blood contained .05% alcohol after the accident; it posits that everybody at trial knew what the evidence would be

and an offer of proof was not needed. We disagree. We do not know from the transcript provided to us who was going to testify, the person's qualifications, the scientific basis of any "test," and for what purpose the proposed testimony was being offered. All of these factors contribute to the decision of the trial court as to the admission of evidence. An offer of proof would have allowed the trial court to decipher the relevancy and materiality of evidence in light of what had transpired at trial as opposed to relying on the pre-trial speculation, argument and disagreement of counsel as to what the evidence may or may not show once the trial began. *See Roy v. Missouri Pacific Railroad Co.,* 43 S.W.3d 351, 368 (Mo.App. W.D.2001). We find no support in the law for a general proposition that the supposed results of some "scientific" test to show a supposed alcohol content level will always be admissible in every case and for whatever reason.

The jury did hear evidence of English's alcohol consumption. The night before the accident, English's boss had served iced beer from the back of the truck and English had drunk a half-pint of vodka by himself. The jury also heard that English regularly consumed alcohol, had a previous drinking problem, and had several driving while intoxicated ("DWI") tickets before and after the accident. Furthermore, evidence was admitted that, after the accident, English admitted to his physician "a full-blown alcohol problem."

We decline to review for plain error as we find no error affecting substantial rights and a manifest injustice or resulting miscarriage of justice. We note that the trial court correctly indicated it would revisit the issue at a later date. The court was not given the opportunity to revisit any tentative ruling. Furthermore, we note that an entire category of evidence was not excluded. The jury heard ample evidence of alcohol consumption by English. The trial court simply noted that the jury may have a hard time figuring out what a number, ".05," would mean to anybody. Appellant has failed to show how the trial court plainly erred in excluding any specific evidence which was relevant in this particular cause of action. Point I is denied.

## POINT II

Appellant avers in its second point that:

The trial court erred in refusing to submit [Appellant's] Instruction "E" to the jury because the jury should have been permitted to determine whether there was an intervening cause of [English's] accident, in that without the negligent actions of the general contractor, the subcontractor, and the forklift driver, the accident would not have occurred.

Appellant is claiming that it is a legal question whether the court erred in failing to allow the jury to decide whether the actions of the contractor and subcontractor "served to cut off any responsibility that [Appellant] may have had ... and constituted *the* proximate cause of the tragedy." Appellant claims our scope of review is *de novo* because of a "*total* refusal to submit a theory of recovery or defense" as a jury must be properly instructed on submissible issues as a matter of law.

◼ The tendered instruction, ostensibly [1] Appellant's proposed affirmative converse instruction, was Instruction E, as follows:

legal file.

1. We say "ostensibly" because we were not given the verdict director in the 952–page

Your verdict must be for [Appellant] if you believe that the actions of Gray Construction Company, or Johnson Masonry, Inc. or Edward Lewallen in allowing the forklift to move scaffolding in such a way as to come into contact with [Appellant's] overhead power lines constitutes an intervening cause of [English's] damages.

An "intervening cause" as used in these instructions means a new and independent force which so interrupts the chain of events that the result is no longer the natural and probable consequence of [Appellant's] conduct and ought not have been anticipated by [Appellant].

Appellant's instruction attempts to blame Gray Construction Company, Johnson Masonry, Inc, or Edward Lewallen, who were not parties in this action, for the injury. It now argues that any "warning from [Appellant] would have been superfluous and would have added nothing to the mix of knowledge of the workers." Appellant concludes that because the power lines were open and obvious, the proposed instruction "would have allowed the jury to consider whether the malfeasance of these third parties was a superseding cause of the accident, even assuming that [Appellant] was somehow negligent." Appellant thus argues that the issue of causation is a factual one for the jury.

■ Once again, a "procedural" issue contributes to our analysis of Appellant's claim of error. Appellant did not file a motion for a directed verdict at the close of the evidence, therefore, it has waived any contention that English failed to prove a submissible case against Appellant. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 163 (Mo.App. W.D.1997). Appellant simply argues that all the other people were more negligent for the injury. Appellant's proposed jury instruction invited the jury to determine if any actions of any contractor or subcontractor were considered more negligent than Appellant's actions so as to be an intervening cause, thereby relieving Appellant of its negligent actions. That determination was not a proper subject in the proposed jury instruction.

■ The question of causation between concurrent negligent acts is an issue for the jury to determine. The determination of proximate cause is dependent upon the particular facts of each case and is generally an issue reserved for the trier of fact. *See Linton v. Missouri Highway & Transportation Commission*, 980 S.W.2d 4, 9 (Mo.App. E.D.1998). "The practical test of proximate cause is whether the negligence is 'an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages.'" *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 475 (Mo.App. E.D.1997) (quoting *Schaffer v. Bess*, 822 S.W.2d 871, 876 (Mo.App. E.D.1991)). A defendant's negligence does not need to be the sole cause of the injury, but rather need only be one of the efficient causes thereof without which the injury would not have occurred. *Vintila v. Drassen*, 52 S.W.3d 28, 41 (Mo.App. S.D.2001). This includes where "the purported intervening cause occurs in combination or concurrent with earlier negligence," *Collins v. Missouri Bar Plan*, 157 S.W.3d 726, 732 (Mo.App. W.D.2005), or where the intervening act itself constitutes "an act of the plaintiff himself which is a foreseeable consequence of the original act of negligence." *Esmond v. Bituminous Cas. Corp.*, 23 S.W.3d 748, 753 (Mo.App. W.D.2000).

■ Thus, when reserved for the trier of fact in a jury-tried case, proximate cause is submitted to the jury through the plaintiff's verdict director which requires a

finding that the alleged negligent conduct directly caused or directly contributed to cause the plaintiff's injuries. *See* MAI 19.01. As noted, Appellant has conceded that a submissible case for negligence was made by English. Whether Appellant's actions proximately caused the injury was properly submitted to the jury in the verdict director. Appellant did not property converse the finding of proximate cause in Instruction E. Instead, Appellant sought to introduce other causes of negligence against non-parties into the converse instruction, claiming the actions of others were an intervening cause of English's injuries.

■■■■ The issue of an intervening cause, occurs when "a new and independent force ... so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of an act of concurring or contributory negligence." *Simonian*, 957 S.W.2d at 475. An intervening cause will not break the chain of causation when it is merely a natural progression of events that were set in motion by the original negligent act. *Collins*, 157 S.W.3d at 732. "An intervening cause will not preclude liability if it 'is itself a foreseeable and natural product of the original negligence.' " *Esmond*, 23 S.W.3d at 753 (quoting *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1996)). That determination was properly made by the trial court.

The trial court did not err in refusing Instruction E as it was an improper converse instruction and it injected false issues to the jury. Point II is denied.

## POINT III

■■■■ Appellant's third point alleges trial court error in awarding prejudgment interest; it claims that English "did not plead facts sufficient to support such an award" and that English's demand letter "did not comply with the requirements of § 408.040.2,"[2] that the demand be sent by certified mail. We find Appellant's third point has merit.

■■■■ In pertinent part, when this petition for damages was filed, § 408.040.2 provided for prejudgment interest in all tort actions where a demand for payment of a claim or an offer of settlement of a claim was made in writing, sent by certified mail, and left open for sixty days unless rejected earlier. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 448–49 (Mo. banc 1998).[3] "[W]hen statutory language is clear, courts must give effect to the language as written" and "are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *Id.* at 449. In *Emery*, the court rejected an earlier case, which had held that certified mail was not required where the opposing party did not deny receipt of the offer or had actual notice of the offer. *Id.; see Larabee v. Washington*, 793 S.W.2d 357, 361 (Mo.App. W.D.1990) (overruled in part by *Emery*, 976 S.W.2d at 449–50).

English concedes that the demand letter must be sent by certified mail. English was unable to produce evidence at the subsequent hearing to prove that a demand letter was sent by certified mail; however, English argues that Appellant relieved English of his burden of proving that the demand was sent by certified mail when Appellant judicially admitted that

---

**2.** All references to statutes are to RSMo 2000, unless otherwise specified.

**3.** Provisions of the statute were changed in 2005; however, the relevant provision that the demand be sent by certified mail was not changed in 2005.

English complied with the requirements of the prejudgment interest statute and was thus entitled to prejudgment interest. English relies on his original petition and each amended version, which contained the following averment: "[t]he terms and conditions of R.S.Mo. § 408.080[4] have been complied with and [English] is entitled to prejudgment interest as provided by said statute." Appellant admitted the averment in each pleading but now contends that it was aware that English had mistakenly cited § 408.080 instead of § 408.040.2 in its pleadings and was simply admitting that English "would be entitled to whatever in the way of prejudgment interest was 'provided by said statute'—*i.e.*, none."

The trial court ruled that Appellant should have known all along which statute plaintiff intended to invoke and was bound by the judicial admission in its answers to the various petitions and was precluded from contesting prejudgment interest. In admitting that § 408.080 had been complied with, Appellant is apparently now claiming that it was simply admitting to a nullity. We agree with the trial court that Appellant should have known which statute plaintiff intended to invoke; however, the admission on the pleading cannot stand as a judicial admission under the facts of this case.

The pleading neither alleged facts, which would absolve English of his obligation to produce proof on the issue, nor alleged a binding, judicial admission. Although English cites to persuasive cases where the failure to respond to requests for admissions compelled a legal conclusion, in this case, the pleadings did not set forth enough facts to provide a finding of a judicial admission. Had English set forth sufficient facts to indicate compliance with § 408.040.2, English would have been relieved of his obligation to prove those facts. The trial court simply erred in finding that Appellant was bound by a judicial admission. Point III is granted.

The judgment is affirmed in all respects except for the provision in the Amended Judgment allowing prejudgment interest. The provision for prejudgment interest is reversed.

PARRISH and SCOTT, JJ., concur.

---

4. Section 408.080, which has no relevance in this case, states:

Parties may contract, in writing, for the payment of interest upon interest; but the interest shall not be compounded more often than once a month. Where a different rate is not expressed, interest upon interest shall be at the same rate as interest on the principal debt. Loans governed by section 408.035 are not subject to the provisions of this section.