

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | |
|---|---|
| ST. LOUIS CENTER FOR AESTHETIC AND RESTORATIVE DENTISTRY, ET AL., | No. ED110598 |
| Appellants, | Appeal from the Circuit Court of St. Louis County |
| vs. | Honorable Joseph S. Dueker |
| A. THOMAS DEWOSKIN, ET AL., | |
| Respondents. | Filed: May 16, 2023 |

## I.     Introduction

Dr. Guilan Norouzi[1] ("Dr. Norouzi" or "Appellant") appeals the judgment of the Circuit Court of St. Louis County, arguing the circuit court erred in granting summary judgment in favor of A. Thomas DeWoskin ("DeWoskin") and the law office where DeWoskin is a partner, Danna McKitrick, P.C. (collectively, "Respondents").  Because the circuit court's post-judgment ruling was not an intervening cause of Appellant's damages, and because Appellant's expert witness sufficiently identified Appellant's damages, we reverse the circuit court's grant of summary judgment in favor of Respondents.

---

[1] Dr. Norouzi has filed for Chapter 7 bankruptcy.  Although the bankruptcy trustee has been substituted as the real party in interest, for the sake of clarity, we refer to Dr. Norouzi as Appellant.

## II. Factual and Procedural Background

Underlying Proceeding

Dr. Norouzi is the sole shareholder of St. Louis Center for Aesthetic and Restorative Dentistry ("SLC"). On February 23, 2012, Dr. Norouzi and SLC filed a lawsuit against Victoria Zadeh ("Zadeh"), Jay Steinberg ("Steinberg"), and GNVZ, LC (collectively, "the original defendants"), alleging various causes of action relating to the mishandling of SLC's finances ("underlying pleading"). The Honorable Judge Burton was the presiding judge. On April 5, 2015, at Dr. Norouzi's request, Dr. Norouzi and SLC's original counsel sought leave to withdraw.

On April 15, 2015, the original defendants filed a motion for sanctions in response to Dr. Norouzi's refusal to sit for a deposition. Judge Burton held a hearing on this motion on May 15, 2015. DeWoskin was present at this hearing but did not enter his appearance or defend against the motion. Judge Burton struck Dr. Norouzi's and SLC's underlying pleading, entered a default judgment, and set a damages hearing for July 8, 2015. Neither DeWoskin nor Dr. Norouzi appeared at the damages hearing.

Following the damages hearing, Judge Burton entered a judgment in favor of Zadeh and Steinberg, and against Dr. Norouzi in the amount of $382,376.00.[2] Judge Burton further entered judgment in favor of Zadeh and against SLC and Dr. Norouzi, jointly and severably, in the amount of $28,000.00 for compensatory damages, plus an additional $28,000.00 in punitive damages. Regarding GNVZ, LC, Judge Burton entered judgment in favor of GNVZ, LC, and against SLC and Dr. Norouzi, in the amount of $778,261.68, and against Dr. Norouzi, individually, in the amount of $417,896.00. Judge Burton also awarded punitive damages in favor of GNVZ, LC and

---

[2] Because SLC is no longer a party, either to the underlying malpractice suit or this appeal, we need not detail the judgment against it individually.

against Dr. Norouzi in the amount of $313,447.00.  In sum, the judgments entered against Dr. Norouzi totaled almost $1.2 million.

DeWoskin filed a motion to set aside the judgments on July 21, 2015, arguing, *inter alia*, that: (1) the circuit court's judgment contained "significant irregularities and discrepancies between the findings of fact, conclusions of law and the judgment with respect to damages;" (2) the circuit court "awarded punitive damages in excess of $300,000.00 against Dr. Norouzi without any specific finding that Dr. Norouzi had an evil motive or reckless indifference to the rights of others;" and (3) that punitive damages are not available for the claims for which they were entered. Judge Burton denied this motion on September 1, 2015.  This judgment was not appealed.

Legal Malpractice Lawsuit

Appellant filed a legal malpractice lawsuit against Respondents on May 9, 2019.  Appellant alleged DeWoskin was negligent in failing to enter as counsel of record and defend Appellant at the damages hearing only.[3]  Appellant further alleged that, but for DeWoskin's failure to appear on behalf of Appellant, the circuit court would not have entered as substantial a judgment against Appellant, and therefore, Appellant sustained damages.

Appellant endorsed attorney Richard McLeod ("McLeod") as an expert witness on her behalf.  McLeod sat for deposition on December 13, 2021.  McLeod testified, *inter alia*, "there is no way a judgment anything near that would have been entered by any judge in our state had [Appellant] been competently represented at that [damages] hearing."

On February 24, 2022, Respondents filed a motion for summary judgment, arguing Appellant failed to make a submissible case for legal malpractice because Appellant could not prove Respondents' alleged negligence was the proximate cause of her injury or that there were

---

[3] Although DeWoskin was present and failed to enter his appearance at both the default hearing and the damages hearing, Appellant limits her argument to his failure to enter his appearance and defend her at the damages hearing.

3

damages, both required elements of a legal malpractice claim. The circuit court granted summary judgment in favor of Respondents on April 19, 2022, but did not address issues of proximate cause and damages. Instead, the circuit court ruled that Judge Burton's denial of the motion to set aside was an intervening cause that broke "the causal connection between [Appellant]'s claimed damages and [Respondent]'s alleged conduct."

### III. Standard of Review

We review a trial court's entry of summary judgment *de novo. ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011)). We will affirm summary judgment "by any appropriate theory supported by the record." *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 264 (Mo. banc 2013).

### IV. Analysis

Appellant brings two points on appeal. In her first point, Appellant argues the circuit court erred in granting Respondents' motion for summary judgment because the court misapplied the law by finding Judge Burton's denial of Appellant's motion to set aside was an intervening cause, preventing Appellant from establishing all of the elements of negligent representation. In her second point, Appellant argues the circuit court erred in granting Respondents' motion for summary judgment because the testimony of Appellant's expert witness sufficiently established Appellant's damages. We agree. We reverse the circuit court's grant of summary judgment.

To succeed on a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligence by the attorney; (3) that the attorney's negligence is the

4

proximate cause of plaintiff's damages; and (4) damages. *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 561 (Mo. banc 2014).

Respondents dispute the existence of an attorney-client relationship. The litigation in this case, however, has focused on the issue of causation. Appellant's first point focuses on the proximate cause element. Her second point focuses on both the proximate cause and damages element.

Point I: Circuit Court's Denial of Appellant's Motion to Set Aside as Intervening Cause

To prove proximate causation, a plaintiff must prove "that the injury was a reasonable and probable consequence of the defendant's negligence." *Id.* at 562. The determination of whether proximate cause exists is generally a question for the jury. *SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 546 (Mo. App. E.D. 2016). One exception is "when the evidence reveals the existence of an intervening cause which eclipses the role the defendant's conduct played in the plaintiff's injury." *Id.* "The mere existence of an intervening cause or causes does not necessarily absolve the original negligent actor from responsibility." *Thompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo. App. E.D. 1996). Intervening causes may not absolve the original negligent tortfeasor from negligence where the intervening cause "is itself a foreseeable and natural product of the original negligence." *Id.* at 191 (quoting *Jordan v. Gen. Growth Dev. Corp.*, 675 S.W.2d 901, 903 (Mo. App. W.D. 1984)) (internal quotation marks omitted). An intervening cause is an affirmative defense, for which the defendant bears the burden of proof. *SKMDV Holdings, Inc.*, 494 S.W.3d at 546.

Appellant argues the circuit court misapplied the law in granting summary judgment in favor of Respondents when it found:

> Upon argument of the parties, the Court's review of the parties' various motions, exhibits, memoranda, as well as the Court's analysis of relevant authority, the Court

finds, following the Missouri Court of Appeals' opinion in <u>Coin Accepters, Inc. v. Haverstock, Garrett & Roberts, LLP</u>, 405 S.W.3d 19 (Mo. App. E.D. 2013), among other things, that *Judge Burton's independent analysis of the post-trial motion is an intervening cause that breaks any causal connection between [Appellant]'s claimed damages and [Respondents'] alleged conduct*.

(emphasis added). Appellant argues that an intervening cause is an affirmative defense that must be proven with evidence, which Respondents failed to adduce. Further, Appellant argues that even if Judge Burton's denial of the motion to set aside is an intervening cause, this action does not necessarily absolve Respondents of liability because "[a]n intervening cause will not break the chain of causation when it is merely a natural progression of events that were sent [*sic*] in motion by the original negligent act." (quoting *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 857 (Mo. App. S.D. 2007)). We agree. Judge Burton's denial of the motion to set aside the judgment did not eclipse the role Respondent's conduct played in Appellant's injury, and was a natural progression of events set in motion by DeWoskin's failure to appear and defend Appellant at the damages hearing. *See English*, 220 S.W.3d at 857; *SKMDV Holdings, Inc.*, 494 S.W.3d at 546.

Respondents urge us to affirm the circuit court's finding of a lack of proximate cause, arguing Judge Burton's denial of the motion to set aside was "a new and independent force," *i.e.*, an intervening cause, that interrupted the causal connection between Appellant's claimed damages and Respondents' alleged negligence. Respondents rely, and the circuit court relied, on *Coin Acceptors, Inc. v. Haverstock, Garrett & Roberts, LLP*, 405 S.W.3d 19 (Mo. App. E.D. 2013).

In *Coin Acceptors*, the trial court found Coinco had infringed on a patent, but that Coinco's invention preceded the patent, rendering the patent invalid. *Id.* at 21. Coinco's competitor moved for reconsideration and the court held a rehearing on the validity issue. *Id.* At this hearing, the court requested specific references to the transcript to support Coinco's attorney's ("Garrett")

6

argument regarding the timing of the invention. *Id.* at 21-22. Garrett provided some references, but "he did not have every pertinent citation at his fingertips." *Id.* at 22. Garrett "offered to supplement his argument with further specifics the next day." *Id.* At the hearing, before Garrett had a chance to supplement, the trial court found the record failed to satisfy the "clear and convincing" standard of proof. *Id.* "To explain his reversal, the judge conceded that he had previously applied, erroneously, a lower standard of proof." *Id.* Coinco moved for another rehearing, arguing Garrett's presentation "could have been more clear and precise." *Id.* The trial court denied this motion, "confirming that it had reviewed the supplemental exhibit presented by Coinco … and had no concerns with the clarity or precision of Coinco's presentation at oral argument." *Id.*

Coinco filed a legal malpractice suit against Garrett, alleging Garrett's "inadequate preparation, briefing, and argument in connection with the [rehearing] caused Coinco to lose the case." *Id.* at 23. We found that the trial court's judgment was an intervening cause because "the evidence that Coinco [claimed] that [Garrett] should have cited at oral argument is the same evidence that [the trial court] considered and found insufficient." *Id.* at 27. Furthermore, the trial court "squarely decided that he was not persuaded by that evidence, and [Coinco] is not able to point to any deficiency of [Garrett] which could possibly have prevented [the trial court] from changing his mind." *Id.* (first alteration in original) (internal quotation marks omitted). We declined to find proximate cause where the appellant "simply critiques the quality of [r]espondents' argument," distinguishing from cases where the attorney "fail[s] to introduce vital evidence at trial" or cases involving "fatal procedural oversights" or "fatal technical omissions." *Id.* at 25-26.

*Coin Acceptors* is distinguishable. In *Coin Acceptors*, the attorney's negligence, as alleged, related only to the quality of the attorney's advocacy. *Id.* at 27. Here, the alleged negligence is the attorney's failure to act entirely. Furthermore, the trial court in *Coin Acceptors* made it clear that it would have arrived at the same conclusion regardless of whether the attorney would have acted in conformance to the appellant's suggestions. *Id.* Here, the circuit court did not indicate whether the damages award would have been the same had an attorney entered their appearance and defended Appellant at the damages hearing, Respondents' alleged conduct was more akin to the situations hypothesized in *Coin Acceptors* where the attorney would be liable for obvious failures, and Appellant's expert testified the damages would not have been as drastic had an attorney entered and defended Appellant.

Respondents additionally argue that Judge Burton's denial of Appellant's motion to set aside was an unforeseeable intervening cause arising out of DeWoskin's failure to enter his appearance at the damages hearing. We disagree. No party is entitled to have a default judgment against them set aside. *See* Rule 74.05(d). "[A] default judgment *may* be set aside" if the party can establish "facts constituting a meritorious defense" and "good cause." *Id.* (emphasis added). "'Good cause' includes a mistake or conduct that *is not intentionally or recklessly designed to impede the judicial process*." *Id.* (emphasis added). Here, Appellant adduced evidence in the summary judgment record that DeWoskin failed to enter an appearance and defend Appellant at the damages hearing, which, if true, is a reckless, if not intentional, stratagem that fails to demonstrate good cause. Therefore, even if Judge Burton's denial of Appellant's motion was an intervening cause, it was a foreseeable consequence of DeWoskin's failure to appear. "An intervening cause will not break the chain of causation when it is merely a natural progression of events that were set in motion by the original negligent act." *English*, 220 S.W.3d at 857.

8

The circuit court's denial of the motion to set aside the judgment is not an intervening cause that breaks the chain of causation. Therefore, Respondents are not entitled to judgment as a matter of law on this basis.

Point I is granted.

### Point II: Expert Witness

Respondents' motion for summary judgment made only one allegation as to why they were entitled to judgment as a matter of law: Appellant failed to produce evidence sufficient to allow the trier of fact to find the existence of proximate cause and damages. In their Memorandum in Support, Respondents argued that the testimony of Appellant's expert witness failed to establish a causal link between what she alleged Respondents failed to do and any damages she incurred. The circuit court did not rule on this issue. Appellant argues her expert witness sufficiently identified Respondents' negligence and that it caused her damages. Alternatively, Appellant argues that her claim does not require expert testimony because the negligent action alleged is negligence *per se*. Respondents argue the alleged negligence would not be "clear and palpable" to a jury and the testimony of Appellant's expert witness was merely speculative.

Even though the circuit court did not rule on this issue, we address this point now because we may affirm summary judgment "by any appropriate theory supported by the record." *Columbia Cas. Co.*, 411 S.W.3d at 264. The record in this case does not present a theory that persuades us to affirm the trial court's grant of summary judgment. We find the testimony of Appellant's expert witness in the summary judgment record sufficient to establish causation and damages.

9

Expert testimony is required to prove proximate causation in legal malpractice claims, except cases where the alleged negligence is "clear and palpable" to a jury of laymen. *SKMDV Holdings, Inc.*, 494 S.W.3d at 551.[4]

In *London v. Weitzman,* we found the expert testimony sufficient to establish damages for legal malpractice. 884 S.W.2d 674 (Mo. App. E.D. 1994). In *London*, the underlying case concerned a divorce settlement wherein the wife committed marital misconduct but the husband did not wish to get a divorce. *Id.* at 675. The attorney told the plaintiff that she would not get the amount of money she requested and encouraged her to accept a settlement awarding her twenty percent of the marital assets. *Id.* at 676. The expert witness testified the asset allocation in a typical dissolution process begins at a 50/50 split, but marital misconduct may affect the allocation. *Id.* The expert also testified that misconduct is not normally considered where the injured spouse wishes to continue the marriage after the other party's misconduct. *Id.* The expert further testified, "in advising [the wife] to accept a settlement of twenty percent of the marital assets [the attorney] failed to exercise the appropriate standard of care that an attorney must meet." *Id.* The trial court granted the defendant's motion for judgment notwithstanding the verdict solely because the court found the plaintiff "failed to prove a specific amount of damages with reasonable certainty." *Id.* at 677. This Court recognized the trial court "misconstrued the rule against speculative damages which relates not to the difficulty in calculating the amount of damages but to the more basic question of whether there are specifically identifiable damages." *Id.* "[D]amages are speculative only if the uncertainty concerns the fact of whether there are *any* damages rather than the amount."

---

[4] We are not convinced this case requires expert testimony. The commonly cited situation wherein expert testimony is not necessary is a negligence claim arising from a lawyer "allowing the statute of limitations to expire on a claim which had been entrusted to him for prosecution, or allowing some other time limit to pass." *Zweifel v. Zenge and Smith*, 778 S.W.2d 372, 374 (Mo. App. W.D. 1989). Conversely, claims involving issues of substantive law, jury instructions, or determinations of viable issues for appeal do require expert testimony. *Id.* The failure to appear on behalf of a client is more similar to allowing the statute of limitations to expire rather than a substantive question of law. Therefore, we believe failure to appear on behalf of a client would be "clear and palpable" to a jury of laymen.

*Id.* (quoting R.E. Mallen & J.M Smith, *Legal Malpractice*, Vol. I, § 16.3 (3d Ed. 1989)) (internal quotation marks omitted). We found such testimony was "sufficient to permit the jury to find the existence of identifiable damages caused by [the attorney's] professional negligence and to make an informed estimate of the amount of plaintiff's damages." *Id.*

Here, although McLeod was unable to provide a specific dollar amount that he believed Appellant was damaged, McLeod sufficiently opined that there *were* damages, and narrowed Appellant's damages to the punitive damages awarded. At his deposition, McLeod testified, regarding the damages hearing, "[I]t is my opinion that there is no way a judgment anything near that would have been entered by any judge in our state had [Appellant] been competently represented at that hearing." McLeod further testified, "I can't give you specifics as to what would have happened. I can tell you what would have not happened. The judgment for hundreds of thousands of dollars for punitive damages almost certainly would not have been allowed." When pressed to provide a specific dollar amount for damages, McLeod testified, "I'm confident way more than more likely than not that had [Appellant] been competently represented, the numbers wouldn't have been as bad as they were either." Respondents' attorney questioned McLeod about the fact that punitive damages may have still been awarded against Dr. Norouzi even if she had been represented, to which McLeod responded, "That's possible, yes. It wouldn't have been this one though." McLeod repeatedly testified that "but for" DeWoskin's failure to appear, the result would have been different. These are not speculative damages. Rather, McLeod's testimony was sufficient to permit the jury to find the existence of identifiable damages caused by DeWoskin's professional negligence and make an informed estimate of the amount of plaintiff's damages. Point II is granted.

## V. Conclusion

For these reasons, we reverse the circuit court's grant of summary judgment and remand this case to the circuit court for further proceedings consistent with this opinion.

_____
Kelly C. Broniec, Presiding Judge

Philip M. Hess, J. and
James M. Dowd, J. concur.

12