In the
 Missouri Court of Appeals
 Western District

 
 COLLIN M. STOSBERG, 
  WD83723 consolidated with
 Appellant,  WD83741
 v.  OPINION FILED:
 
 ELECTRIC INSURANCE COMPANY,  February 9, 2021
 
 Respondent. 
 
 

 Appeal from the Circuit Court of Platte County, Missouri
 The Honorable James Walter Van Amburg, Judge

 Before Division One:
 Thomas N. Chapman, P.J., Mark D. Pfeiffer, and W. Douglas Thomson, JJ.

 Collin Stosberg (“Stosberg”) appeals from the Platte County Circuit Court’s entry of

summary judgment in favor of Electric Insurance Company (“Electric”) on Stosberg’s claim for

Uninsured Motorist (“UM”) benefits. The trial court based its entry of summary judgment on

three independent grounds: (1) UM coverage did not apply to Stosberg’s injuries because his

injuries did not “arise out of the ownership, maintenance, or use of the ‘uninsured motor

vehicle’”; (2) an exclusion to Stosberg’s UM coverage applied; and (3) workers’ compensation,

rather than private automobile insurance, is the remedy chosen by the legislature to provide

financial compensation for injury or death sustained in the line of duty by Missouri State
Highway Patrol officers. Stosberg asserts that the trial court erred on each of these three

grounds. The judgment is reversed and the case is remanded.

 Background

 This case arises out of an injury Stosberg alleged that he suffered while working a DUI

checkpoint in the scope of his duties as a sergeant with the Missouri State Highway Patrol. A

suspect on a motorcycle, Del Osborne (“Osborne”), was stopped at the checkpoint. Osborne

refused orders to get off of his motorcycle or shut the motorcycle off. Stosberg alleged that

while attempting to apprehend Osborne, Stosberg had a hold of Osborne’s backpack when

Osborne accelerated his motorcycle forward, causing injury to Stosberg’s neck as Stosberg

pulled Osborne from the motorcycle.

 After the incident, Stosberg made a claim against his employer, the Missouri State

Highway Patrol, for workers’ compensation benefits relating to the injuries he claimed to have

sustained in the incident. In connection with his workers’ compensation claim, Stosberg

received $9,433.73 in medical expenses, and he received $19,093.20 as a lump sum settlement

from the Missouri Highway & Transportation Commission (“MHTC”), the insurer of the

Missouri State Highway Patrol’s workers’ compensation liability. The settlement was approved

by an administrative law judge.

 In his Fourth Amended Petition in the instant action, Stosberg asserted a negligence claim

against the Estate of Del Osborne.1 Stosberg also asserted two counts against Electric, alleging

(1) the breach of an insurance agreement and (2) vexatious refusal to pay. At the time of the

1
 By the time Stosberg filed his Fourth Amended Petition, Osborne was deceased, and his decedent’s estate, which
had been opened in Cass County, Missouri, was named as the party defendant. Stosberg’s claim against Osborne’s
estate has since been dismissed without prejudice.

 2
incident, Stosberg had $200,000 of uninsured motorist coverage with Electric pursuant to his

personal auto insurance policy. Electric denied Stosberg coverage with respect to the incident.

The UM endorsement in Stosberg’s policy provided:

 A. We will pay compensatory damages which an “insured” is legally entitled to
 recover from the owner or operator of an “uninsured motor vehicle” because of
 “bodily injury”:

 1. Sustained by an “insured”; and
 2. Caused by an “accident”.

 The owner’s or operator’s liability for these damages must arise out of the
 ownership, maintenance or use of the “uninsured motor vehicle”.

The policy also provided exclusions to the policy’s UM endorsement. One such exclusion

provided:

 C. This coverage shall not apply directly or indirectly to benefit any insurer or
 self-insurer under any of the following or similar law:

 1. Workers’ compensation law; or
 2. Disability benefits Law.

 As this case proceeded, Electric moved for summary judgment on Stosberg’s claims

against it. The trial court granted summary judgment to Electric on Stosberg’s UM claim based

upon three independent grounds: (1) Stosberg’s injuries did not, as a matter of law, “arise out of”

Osborne’s “use” of a motor vehicle; (2) the abovementioned exclusion in Stosberg’s policy

applied to his claim; and (3) “Workers’ compensation, not private automobile insurance, is the

remedy chosen by both the legislature and the Missouri Highways and Transportation

Commission to provide financial compensation for injury or death sustained in the line of duty

by Missouri State Highway Patrol Officers.” The trial court also granted summary judgment on

Stosberg’s vexatious refusal claim on the same grounds as his UM claim, “but also because the

 3
undisputed facts show[ed] that Electric’s refusal to pay UM benefits was not without reasonable

cause or excuse.”2

 Stosberg appeals.

 Standard of Review

 “Appellate review of summary judgment is de novo.” Seaton v. Shelter Mut. Ins. Co.,

574 S.W.3d 245, 246 (Mo. banc 2019) (citing ITT Com. Fin. Corp. v. Mid-Am. Marine Supply

Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)). We review “the record in the light most

favorable to the party against whom judgment was entered.” Id. “The party against whom

summary judgment was entered is accorded the benefit of every doubt.” Id. at 246-47 (citing

Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 648-49 (Mo. App. E.D. 2007)). “Summary

judgment is proper when the moving party has demonstrated, on the basis of facts as to which

there is no genuine dispute, a right to judgment as a matter of law.” Sofia v. Dodson, 601

S.W.3d 205, 209 (Mo. banc 2020) (internal quotations omitted).

 “The interpretation of an insurance policy is a question of law” that we review de novo.

Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007). “Disputes arising from the

interpretation and application of insurance contracts are matters of law for the court where there

are no underlying facts in dispute.” Watters v. Travel Guard Int’l, 136 S.W.3d 100, 107 (Mo.

App. E.D. 2004).

 Analysis

 Stosberg raises three points on appeal. In his first point, he argues that the trial court

erred in finding that Stosberg’s injuries did not arise out of Osborne’s use of his motorcycle in

2
 On appeal, Stosberg does not assert that the trial court erred in granting summary judgment to Electric on
Stosberg’s vexatious refusal claim.

 4
that it was Osborne’s acceleration of the motorcycle that caused Stosberg to fall backward and

feel a “pop” in his neck. In his second point, Stosberg contends that the trial court erred in

finding that Stosberg’s UM claim was excluded by policy language that stated that coverage

“shall not apply directly or indirectly to benefit any insurer or self-insurer under any . . . workers’

compensation law” because the workers’ compensation insurer has no right of subrogation

against first party uninsured motorist coverage in that section 287.1503 provides a right of

subrogation only against “third persons.” In his third point, Stosberg argues that the trial court

erred in finding that the legislature intended for workers’ compensation to be Stosberg’s

exclusive remedy.

 At the outset, there appears to be a factual dispute between the parties about whether

Osborne accelerated the motorcycle during the incident. Electric points to Stosberg’s prior

accounts of the incident and contends that there was no mention of the motorcycle’s acceleration

in Stosberg’s account of the incident in his police report or in his workers’ compensation injury

report. However, in Stosberg’s examination under oath, Stosberg testified that the injury

occurred when Osborne accelerated the motorcycle forward.

 Electric argues that Stosberg’s account of the incident in his deposition is inconsistent

with his prior accounts of the incident and that “a party may not avoid summary judgment by

giving inconsistent testimony and then claiming the inconsistencies demonstrate a genuine issue

of material fact.” Calvert v. Plenge, 351 S.W.3d 851, 855 (Mo. App. E.D. 2011). In Calvert, the

trial court entered summary judgment in favor of the plaintiff on the defendant’s counterclaims.

Id. at 853. The trial court had excluded an affidavit that the defendant sought to introduce to

3
 Unless otherwise indicated, all statutory references are to RSMo. 2016.

 5
establish a genuine issue of material fact. Id. at 855. This affidavit included information that

was omitted from the defendant’s earlier deposition testimony. Id. at 856. The issue on appeal

was whether the subsequent affidavit was inconsistent with the defendant’s prior testimony. Id.

at 855. On appeal, the court found that, although the affidavit contained information that was not

asserted in the defendant’s earlier deposition, the subsequent affidavit did not affirmatively

contradict her earlier testimony. Id. at 856. Thus, the Calvert court held that the trial court erred

in disregarding the defendant’s affidavit. Id.

 In the matter before us, there was no affirmative contradiction between Stosberg’s

deposition testimony and his earlier police report or workers’ compensation report. See id. at

856. That is, while Stosberg’s earlier accounts of the incident do not specifically mention that

the vehicle was in motion, they do not affirmatively state that the motorcycle was not in motion

either. The omission of the motorcycle’s acceleration in Stosberg’s earlier accounts of the

incident could be viewed as having a detrimental effect on the credibility of his subsequent

testimony that asserts he was injured when the motorcycle was accelerated. However, credibility

determinations are inappropriate at the summary judgment stage. United Missouri Bank, N.A. v.

City of Grandview, 105 S.W.3d 890, 898 (Mo. App. W.D. 2003). Whether or not Osborne

accelerated the motorcycle in the incident is a fact issue for the finder of fact. At the summary

judgment stage, we view the facts in the light most favorable to the non-moving party (Stosberg).

Seaton, 574 S.W.3d at 246. In the light most favorable to Stosberg, Osborne accelerated his

motorcycle while Stosberg had ahold of Osborne’s backpack.4

4
 The matter before us is further distinguished from the facts of Calvert, because Stosberg did not seek to introduce
additional summary judgment evidence to create a factual issue for summary judgment purposes. Rather, Stosberg’s
position was consistent throughout this litigation. He pled that Osborne accelerated the motorcycle, and he testified
under oath that Osborne accelerated the motorcycle.

 6
 However, our analysis does not end there, as Electric asserts that summary judgment is

appropriate even if Osborne accelerated the motorcycle while in physical contact with Stosberg.

Accordingly, we proceed in analyzing the points raised by Stosberg in this appeal.

 Point One

 The trial court granted summary judgment to Electric because it found that Stosberg's

injuries did not arise out of Osborne’s ownership, maintenance, or use of the motor vehicle, as

required by Stosberg’s policy with Electric:

 Based on the undisputed material facts, Plaintiff has not met his burden of proving
 coverage under the policy. Plaintiff’s claimed injuries must “arise out of the
 ownership, maintenance or use of the ‘uninsured motor vehicle’” for UM coverage
 to apply under Paragraph A of Part C of the insuring agreement. Missouri courts
 have applied the same or similar policy language in other cases alleging injuries
 sustained by the victims of crimes, the commission of which were aided by the use
 of a vehicle, holding that where the vehicle is merely the “situs” or “locus” of the
 cause of the victim’s injuries, the injuries cannot be said to arise out of the use or
 operation of the motor vehicle. . . . Here, the undisputed facts show that the
 uninsured motor vehicle was merely the “situs” or “locus” of the cause of Plaintiff’s
 claimed injuries. Those injuries do not arise [sic] “arise out of the ownership,
 maintenance or use of the ‘uninsured motor vehicle,’” as required by the policy.

 Stosberg asserts that the trial court erred in its entry of summary judgment on this basis,

because Osborne’s acceleration of the motorcycle was an inherent use of the motorcycle, and

thus, if this use caused Stosberg’s injury, as Stosberg asserts, then his claimed injury “arose out

of” Osborne’s “use” of the motorcycle.

 Under the insurance policy, for Stosberg to recover, his damages “must arise out of the

ownership, maintenance or use of the ‘uninsured motor vehicle.’” With respect to insurance

policies, “Missouri courts have judicially defined both ‘arising out of’ and ‘use.’” Walden v.

Smith, 427 S.W.3d 269, 274 (Mo. App. W.D. 2014). “Arising out of” requires proof of a causal

connection, though the standard of causation is broader than “proximate cause.” Cameron Mut.

 7
Ins. Co. v. Ward, 599 S.W.2d 13, 15 (Mo. App. W.D. 1980) (citing Schmidt v. Utilities Ins. Co.,

182 S.W.2d 181, 183-84 (Mo. 1944)). In Walden, our court summarized how “arising out of”

has been judicially defined when it is used in connection with the “use” of a motor vehicle:

 In summary, Missouri courts consistently define the phrase “arising out of” to
 require a causal relationship, described as “originating from” or “having its origins
 in” or “growing out of” or “flowing from” the object or circumstance referenced in
 the policy or statute. Here, the referenced object or circumstance is the “use” of a
 vehicle.

Walden, 427 S.W.3d at 276. Unless otherwise defined by the policy, “use” “is a broad term

which includes within its scope any means by which a vehicle may be employed or put into

service consistent with its nature as a vehicle including, but not limited to, the operation of,

driving of, or riding in a vehicle.” Id. at 277.

 In determining whether an injury “arises out of the use of a motor vehicle,” some

Missouri courts have at times looked to whether the vehicle was the instrumentality which

caused the injury rather than being the mere situs of the injury. See Lemmons v. Prudential

Prop. & Cas. Ins. Co., 878 S.W.2d 853, 856 (Mo. App. E.D. 1994); Ward v. Int’l Indem. Co.,

897 S.W.2d 627, 628 (Mo. App. E.D. 1995). Missouri courts have also described the “arising

out of” nexus as requiring an injury which arose out of an “inherent use” of the vehicle. Ward,

897 S.W.2d at 629; Steelman v. Holford, 765 S.W.2d 372, 378 (Mo. App. S.D. 1989). In

synthesizing these requirements, our court in Walden noted that the “requirements that a

vehicle’s use be the ‘instrumentality’ of an injury, and that an injury arise out of an ‘inherent use

of a vehicle’ simply reinforce that a causal relationship must exist between injury and use of a

vehicle.” Walden, 427 S.W.3d at 279. “For an accident causing injury to ‘arise out of the use’ of

a vehicle, the purpose for which the vehicle is being employed must be consistent with the

 8
vehicle’s inherent nature, and must create a condition which contributes to cause the accident.”

Id.

 But, “an accident causing injury does not ‘arise out of the use of a vehicle’ when the

vehicle is merely the ‘situs’ or ‘locus’ of an injury.” Walden, 427 S.W.3d at 277 (citing Ward,

897 S.W.2d at 628). “It is legally insufficient that an injury occurs in or near a vehicle, or while

a vehicle is in use, as those facts establish only a temporal and/or spatial relationship between

injury and the vehicle’s use, and not a causal relationship.” Id. at 278. “If the uncontroverted

facts establish only that an injury occurred while a vehicle was being used, then the injury does

not arise out of the use of the vehicle as a matter of law.” Id. at 282 (emphasis in original). Yet,

“so long as a vehicle’s use bears a causal relationship with the accident causing injury, there will

be coverage, even if the ‘accident’ does not involve the vehicle itself or its operation.” Id. at

278.

 In the matter before us, Stosberg asserts that Osborne’s “use” of the motorcycle was the

acceleration of the motorcycle. The acceleration of a motorcycle is consistent with its nature as a

vehicle. The question then becomes whether the acceleration of the motorcycle created “a

condition which contribute[d] to cause the accident” in which Stosberg was injured. Walden,

427 S.W.3d at 279. Stosberg alleged in his Fourth Amended Petition that Osborne was negligent

by failing to warn of his rapid acceleration; by accelerating his vehicle despite being in physical

contact with Stosberg; and by driving his motorcycle such that Stosberg was injured. These

allegations were supported by Stosberg’s testimony under oath:

 I think Sergeant Lynn said turn off the bike, I said step off the bike and he refused.
 At that time he looked around the checkpoint. There was officers and vehicles in
 front of him and I reached up and I grabbed -- he had a backpack on. I grabbed the
 top strap of his backpack with my right arm -- my right hand. We were continuing
 giving him orders to shut off the bike, get off the bike. Within seconds he put the

 9
 vehicle in gear, the motorcycle in gear and his hands on the accelerator to flee, and
 as the bike was going forward while fleeing, I assume, I don't know what he was
 doing, my hand was on his backpack strap, the top strap and the motorcycle went
 one direction and he went the other.

 ….

 When he went to put the vehicle in gear to flee or to not comply, his motorcycle
 went forward at which time he was taken off the bike because I had ahold of his
 right arm -- I'm sorry, his backpack with my right arm, so the motorcycle went one
 direction and he went off the back left side or driver's side.

Stosberg also testified that he was injured when the motorcycle went forward:

 Q. Because I’m trying to understand the mechanism of whether this happened
 when you pulled him off the motorcycle, which was in a stationary position, or
 when the motorcycle took off forward?

 A. When the motorcycle went forward is when I sustained the injury.

 If Osborne accelerated the motorcycle as Stosberg attempted to pull Osborne off of the

motorcycle, then the acceleration of the motorcycle “create[d] a condition which contribute[d] to

cause the accident.” See Walden, 427 S.W.3d at 279. That is, it seems apparent that there would

be a discrepancy between the amount of force exerted on Stosberg from pulling Osborne off of a

stationary motorcycle and the amount of force exerted from pulling Osborne off of a motorcycle

that was accelerating away from Stosberg. Accepting as true Stosberg’s account of the incident

for purposes of our review, Stosberg’s alleged injuries can fairly be said to arise out of Osborne’s

use of the motorcycle.5 Accordingly the trial court erred in finding that Stosberg’s injuries did

not “arise out of” Osborne’s “use” of his motor vehicle.

5
 Although on appeal from the grant of summary judgment we view the evidence in the light most favorable to the
party against whom judgment was entered, Seaton, 574 S.W.3d at 246, we express no opinion as to the credibility of
either party’s factual assertions, which are “for determination following a complete trial.” United Missouri Bank,
N.A., 105 S.W.3d at 898.

 10
 Electric’s contention that the motorcycle was merely the “situs” or “locus” of the injury is

without merit. Electric cites to several cases from Missouri courts and federal courts applying

Missouri law in which a plaintiff’s injuries did not “arise out of the use” of the uninsured’s motor

vehicle. See Ward, 897 S.W.2d at 629 (injury of victim of drive-by shooting did not arise out of

the “use” of the uninsured motor vehicle); Patel v. LM Gen. Ins. Co., 922 F.3d 875, 879 (8th Cir.

2019) (same); Esmond v. Bituminous Cas. Corp., 23 S.W.3d 748, 752 (Mo. App. W.D. 2000)

(injury did not arise from the use of uninsured motor vehicle when truck driver was injured

repositioning his load after swerving to avoid uninsured motor vehicle); Cameron Mut. Ins. Co.,

599 S.W.2d at 18 (injury of gunshot victim did not arise out of the operation, use or maintenance

of the vehicle when victim was injured by accidental discharge of rifle after exiting the stopped

vehicle); Lemmons, 878 S.W.2d at 858 (injury from physical altercation that broke out in

response to rear-end accident did not arise out of the use of uninsured motor vehicle); Walden,

427 S.W.3d at 282-83 (injury of pedestrian bitten by dog through open window of parked truck

did not arise out of the uninsured’s use of vehicle).

 However, the key difference between the matter before us and the cases cited by Electric

is that, if Stosberg is believed, there is a direct connection between Osborne’s use (acceleration)

of the motorcycle and the injury sustained. (“When the motorcycle went forward is when I

sustained the injury.”). That is, based on the facts before us, the factfinder could reasonably

determine that Osborne’s use of the motorcycle (the acceleration) caused Stosberg’s injuries.

Unlike the cases cited by Electric, in the case at bar there is more than a temporal or spatial

relationship between the vehicle’s use and the claimed injury. If Stosberg’s account of the

incident is believed, there is a direct causal connection between Osborne’s use of the vehicle and

the claimed injury in that the use of the vehicle is what caused the motorcycle to pull away from

 11
Stosberg as he held on to Osborne, and it was the motorcycle going forward that caused

Stosberg’s injury.

 Point one is granted.

 Point Two

 In his second point on appeal, Stosberg contends that the trial court erred in finding that

Stosberg’s UM coverage was subject to a policy exclusion which stated that UM coverage “shall

not apply directly or indirectly to benefit any insurer or self-insurer under any . . . workers’

compensation law.” Stosberg contends that the policy exclusion does not apply because the

workers’ compensation insurer has no right of subrogation against first party UM coverage

because section 287.150 provides for subrogation only against “third persons.” We agree.

 For the exclusion to be applicable, as Electric contends, Stosberg’s UM coverage would

have to apply to benefit the workers’ compensation carrier in Stosberg’s prior workers’

compensation claim. Electric argues that section 287.150 provides for a right of subrogation by

the Missouri State Highway Patrol’s workers’ compensation carrier with respect to Stosberg’s

UM claim against Electric. Section 287.150.1 provides, in relevant part:

 Where a third person is liable to the employee . . . for the injury or death, the
 employer shall be subrogated to the right of the employee . . . against such third
 person, and the recovery by such employer shall not be limited to the amount
 payable as compensation to such employee . . . but such employer may recover any
 amount which such employee would have been entitled to recover. Any recovery
 by the employer against such third person shall be apportioned between the
 employer and employee . . . using the provisions [that follow in § 287.150].

(emphasis added).

 This provision provides an employer with a right of subrogation in a claim by an

employee “against such third person” who “is liable to the employee” for an injury covered by

the workers’ compensation laws. Thus, whether the Missouri State Highway Patrol’s workers’

 12
compensation insurer has a right of subrogation with respect to Stosberg’s UM claim against

Electric hinges on whether Electric is a “third person” within the meaning of section 287.150.1.

It is established that UM carriers are not “third persons” within the meaning of Section 287.150.

See Yaakub v. Aetna Cas. & Sur. Co., 882 S.W.2d 743, 745 (Mo. App. E.D. 1994) (workers’

compensation carrier not entitled to offset for uninsured motorist proceeds paid to an insured);

Barker v. Palmarin, 799 S.W.2d 117, 118 (Mo. App. W.D. 1990) (“[T]he uninsured carrier is not

a ‘third person’ liable to the employer or its compensation carrier.”). Moreover, Electric

concedes that Electric is not a third person within the meaning of the statute. Accordingly, no

right of subrogation exists in the Missouri State Highway Patrol’s workers’ compensation carrier

with respect to Stosberg’s UM claim against Electric. Therefore, the policy exclusion at issue is

not triggered.

 The purpose of providing an employer with a right of subrogation with respect to the

employee’s claim against the tortfeasor (the “third person”) is to allow the employer to recoup

workers’ compensation payments made to the injured employee from the person ultimately

responsible for injuring the employee, which “reflects a policy in the law to place the loss upon

the ultimate wrongdoer.” Zueck v. Oppenheimer Gateway Properties, Inc., 809 S.W.2d 384, 390

(Mo. banc 1991) (internal quotations omitted). But, UM coverage is first-party coverage which

insures the injured party rather than the tortfeasor. Truman Med. Ctr., Inc. v. Progressive Cas.

Ins. Co., 597 S.W.3d 362, 370 (Mo. App. W.D. 2020) (“Although an insured must establish the

existence of a claim against the uninsured third party as a precondition to recovery of uninsured

motorist benefits, uninsured motorist coverage remains first-party coverage which insures the

injured party, not the tortfeasor.”). Although UM coverage insures the insured against the

tortious conduct of a third person, UM benefit claims are contractual claims rather than tort

 13
claims. Hill v. Gov’t Emp. Ins. Co., 390 S.W.3d 187, 191 (Mo. App. W.D. 2012); Barker, 799

S.W.2d at 118-19. Accordingly, the policy purpose of the subrogation statute—to place the loss

upon the ultimate wrongdoer—would not be served by allowing a workers’ compensation

employer a subrogation interest on sources of compensation that do not come from the ultimate

wrongdoer. Thus, “the proceeds under [an uninsured motorist] policy are not subject to the

statutory right of subrogation granted the employer.” Barker, 799 S.W.2d at 119.

 Because section 287.150.1 does not grant a subrogation interest to the Missouri State

Highway Patrol’s workers’ compensation carrier with respect to Stosberg’s UM claim against

Electric, the policy exclusion at issue does not apply. Accordingly, the trial court erred in

granting summary judgment on this basis.

 Point two is granted.

 Point Three

 In his third point, Stosberg asserts that the trial court erred in finding that the legislature

intended for workers’ compensation insurance to be Stosberg’s exclusive remedy, because the

legislature has required UM coverage in every personal automotive insurance policy without

reference to the occupation of the insured. See § 379.203. He argues further that nothing in the

record indicates that the legislature intended to preclude UM coverage for patrol officers injured

in the line of duty.

 In granting summary judgment, the trial court stated: “Workers’ compensation, not

private automobile insurance, is the remedy chosen by both the legislature and the Missouri

Highways and Transportation Commission to provide financial compensation for injury or death

 14
sustained in the line of duty by Missouri State Highway Patrol Officers.”6 In moving for

summary judgment on public policy grounds, Electric argued that, as a matter of public policy,

personal auto insurance should not be the source of redress for law enforcement officers injured

in the line of duty.

 We note that neither the trial court nor Electric identified any legal authority for this

purported public policy, aside from the fact that Missouri State Highway Patrol officers are

covered by workers’ compensation laws. The crux of Electric’s argument is that Missouri State

Highway Patrol officers are covered by workers’ compensation laws, and thus, there is a strong

public policy that workers’ compensation is the exclusive remedy for officers injured in the line

of duty due to what Electric asserts are increased risks inherent in the duties of law enforcement

officers. However, no such public policy exists with respect to injured employees in other lines

of work, and we find nothing that indicates that the legislature intended such a policy to apply

specifically to law enforcement officers.

 Many employees have been covered by workers’ compensation laws prior to pursuing

UM benefits, and Missouri courts have found that the mere fact of a workers’ compensation

claim by an injured party does not serve to limit the UM benefits owed to the injured party.

Barker, 799 S.W.2d at 119 (“The rationale of Cano is clear—uninsured benefits should not be

reduced to injured motorists just because worker’s compensation also applied to the injuries.”);

see also Yaakub, 882 S.W.2d at 745; Cano v. Travelers Ins. Co., 656 S.W.2d 266, 270 (Mo. banc

6
 Although briefed by the parties as a third independent ground for the trial court’s grant of summary judgment, it is
unclear from the trial court’s ruling whether the trial court was providing policy reasons in support of its finding on
the policy exclusion at issue in Point Two, supra, or if the trial court found that public policy was an independent
ground precluding Stosberg’s UM claim. For purposes of this appeal, we treat the trial court’s policy analysis as
though it was an independent basis supporting its grant of summary judgment.

 15
1983); Douthet v. State Farm Mut. Auto. Ins. Co., 546 S.W.2d 156, 159 (Mo. banc 1977);

Williams v. Cas. Reciprocal Exch., 929 S.W.2d 802, 808-09 (Mo. App. W.D. 1996).

 Moreover, UM coverage is “personal coverage which follows the insured.” Schmidt v.

City of Gladstone, 913 S.W.2d 937, 941 (Mo. App. W.D. 1996) (citing Hines v. Gov’t Emps. Ins.

Co., 656 S.W.2d 262, 265 (Mo. banc 1983)). Thus, it follows that, absent express or implied

legal authority to the contrary, such coverage follows employees to the jobsite and provides

benefits according to the contract between insurer and insured.

 Yet, Electric nevertheless singles out law enforcement officers and argues that they

should be deprived of the UM benefits of their private insurance contracts for on the job injuries

caused by uninsured motorists. But, again, Electric fails to point to any legal authority

establishing that the legislature intended that law enforcement officers be treated differently from

other classes of employees with respect to their personal insurance coverage.

 Additionally, Missouri case law does not indicate that law enforcement officers injured in

the line of duty are precluded from pursuing UM benefits; rather, it indicates the opposite. See

Thornburg v. Farmers Ins. Co., 859 S.W.2d 847, 850 (Mo. App. W.D. 1993). In Thornburg, our

court affirmed a jury verdict awarding UM benefits to a police sergeant who was injured in the

line of duty when the sergeant reached through the open window of a fleeing suspect’s car and

was dragged some distance. Id. at 848. Although it is unclear from the opinion in Thornburg

whether the injured officer had previously filed a workers’ compensation claim, Thornburg does

provide support for Stosberg’s contention that there is no public policy that precludes an officer

injured in the line of duty from pursuing UM benefits.

 Because Electric fails to point to any legal authority—either express or implied—for the

purported “strong public policy” it contends exists, and because we are not independently aware

 16
of any, we find that there is no such public policy that singles out and deprives those employed

as law enforcement officers of the UM benefits for which they have contracted simply because

the injured officer may be entitled to a remedy under the workers’ compensation laws. We

therefore find that the trial court erred in granting summary judgment to Electric on this basis.

 Point three is granted.

 Conclusion

 The trial court’s grant of summary judgment in favor of Electric on Count II of

Stosberg’s Fourth Amended Petition For Damages is reversed, and the cause is remanded for

further proceedings consistent with this opinion.

 /s/Thomas N. Chapman
 Thomas N. Chapman, Presiding Judge

All concur.

 17